### CORDS v. COIL MFG. CO. et al.
### No. A-86.

District Court, S. D. California, S. D.
June 11, 1936.

Everett N. Curtis, of San Diego, Cal., for plaintiff.

Lyon & Lyon (by Frederick S. Lyon) and Richard Lyon, all of Los Angeles, Cal., for defendants.

SAMES, District Judge.

The patentee, Wm. Cords, instituted this suit against the defendants, Coil Manufacturing Company and C. J. Doran, for' infringement of patent No. 1,919,584, for methods and apparatus for conveniently making packing rings by hand from straight bands of metal, applied for February 4, 1931, and issued July 25, 1933. The claims of the patent alleged to be infringed by defendants' apparatus are as follows:

"1. An apparatus for bending a thin relatively wide blank edgewise into an annular ring comprising a pair of feed rollers having toothed portions intermeshing and forming a groove designed to receive the blank, a roller bending die having a groove that may be disposed substantially in alinement with said roller groove, means to shift said die with respect to said rollers, and means to rotate said rollers to advance the blank and to cause it to be bent into annular form by said roller die during its advancement."

"3. An apparatus for bending a substantially flat metal blank, having a width greatly in excess of its thickness, edgewise into the form of an annular ring, said apparatus comprising a frame, a pair of rollers supported by said frame and having matched grooves cooperating to form a pass for receiving the blank with the lateral bounding planes of said pass normal to the roller axes and forming a space of a width greater than the thickness of the entering flat blank, bending means carried in predetermined position relative to said frame to impart a given final shape to the ring, and means for driving one of said rollers.

"4. An apparatus for bending a strip of relatively thin metal into the form of a light resilient piston ring, said apparatus comprising a set of cooperating feeding and shaping rollers, and means provided by said rollers for imparting a uniformly dished shape to the ring whereby the latter is given an overall thickness which is greater than the thickness of the metal which forms the said ring.

"5. In an apparatus for bending a strip of thin metal edgewise into the form of an annular ring, means forming a pass of greater width than the thickness of the metal for receiving the strip during its passage through the apparatus, and means for varying the width of said pass to cause more or less predetermined lateral distortion of the strip as said strip is being bent edgewise into annular form."

"8. In subcombination, in an apparatus for reshaping an elongated piece of material, a rotatable member provided with an external set of teeth, and means disposed adjacent said teeth on said member for cooperation with one side of the set of teeth to form a pass for the piece of material, said means comprising a second set of teeth adjustable toward and from the first mentioned set to vary the size of said pass."

"10. The method of making a dished piston ring from a band of metal of a width greatly in excess of its thickness which consists in bending the band of metal into annular form on lines transverse to the width of said band in a manner permitting the resultant compression of the metal adjacent the inside of the ring and the resultant tension of the metal adjacent the outside of the ring to draw said band into a slightly dished form.

"11. The method of making a dished piston ring from a band of flat metal of a width greatly in excess of its thickness, which consists in bending the band into annular form by application of pressure to the edge thereof to bend the band on lines normal to the width of the band while maintaining the other surfaces free of pressure so as to cause the band to assume a dished form as an incident to the bending operation.

"12. The method of making a dished piston ring from a band of metal of a width greatly in excess of its thickness, which consists in bending the band into annular form by application of pressure to the edge thereof to bend the band on lines normal to the width of the band while maintaining the other surfaces free of pressure so as to cause the band to assume a dished form as an incident to the bending operation, and in limiting the extent of lateral deflection of the strip so as to determine the extent of dishing of the ring."

Claims 1 and 3 describe an apparatus for bending a metal blank edgewise into the form of an annular ring. Claim 4 describes an apparatus for bending a strip

of thin metal into the form of a light resilient piston ring, and imparting a uniformly dished shape thereto. Claim 5 describes a means in an apparatus for bending a strip of metal edgewise, and adjusting said means to cause a predetermined lateral distortion thereof. Claim 8 describes a rotatable member adjustable to form a pass therein, and vary the size of said pass for use in combination with an apparatus for reshaping an elongated piece of material. Claims 10, 11, and 12 describe methods of making a dished piston ring from a band of metal of width greatly in excess of its thickness, by bending said band into annular form on lines transverse to its width.

The drawings and recitals of the patent disclose a simple portable device for the production of an annulus from a ribbon of metal bent edgewise, of dished formation. A preferred form of the apparatus is shown in figure 4 of the patent, to wit:

_Fig. 4_

As shown in Figure 4 of the patent, plaintiff's apparatus consists of a plate-like member, having a widened end and a narrow portion opposite, 31–32. The bending elements are disposed adjacent the wider portion, while the narrower portion is utilized to conveniently attach the device to a workbench or similar support adapted to sustain it. The bending elements consist of a centrally positioned roller, 43, with a groove on the periphery

thereof, about which are arranged two other grooved rollers, 55–63, adjustably mounted in an arcuate slot, 52, on the base plate, the radius of said arcuate slot being centered on said centrally positioned roller. The peripheries of said rollers are toothed and geared together and driven by the operation of said centrally mounted roller, to which, at the back of said plate, a crank handle, 41–42, or pulley drive, may be attached. Each of said rollers is grooved on its periphery in alignment and on the same plane. Said rollers are adjustable along said arcuate slot, one of which is operated by a handle, 46, attached thereto, operating around the axis of said central roller. Each of said rollers is made of two parts, a flanged roller with screw threads upon the reduced portion thereof, and a collar threaded to operate upon said reduced portion to form an adjustable pass between said flange and said collar, forming a groove for the movement and lateral support of said wire. Said collar and said flange are toothed on their peripheries, as a part of the gear chain operating said machine.

A strip of material many times wider than its thickness is inserted on edge in the groove between the centrally positioned roller, 43, and the roller 63, mounted in said arcuate groove, and threaded through to engage the groove in the adjustable mounted roller, 55. Said adjustable mounted roller is positioned to deflect said strip and bend the same to form a predetermined size of annulus. On revolution of the rolls, the metal strip is fed through the machine and deflected into annular form. The grooves are adjusted sufficiently wider than the material inserted to permit the desired dishing thereof. The edgewise pressure on the material causes the same to bend on lines transverse to its width, which creates a tendency in the material to become attenuated on its outer edge and condensed on its inner edge, and in proportion as said tendency is avoided, the material in the bending operation will assume a dished or tilted form.

The record shows that the application for the Cords patent was amended more than two years after the application was filed, by the insertion of the following: "The strip may be cut either before or after the bending operation. If desired sufficient material in strip form may be run through the rolls to form a

362

plurality of endless convolutions which do not re-enter the pass, but which, due to the flexibility of the -material will distend laterally and accumulate in a continuous spiral at the left side of the machine, after which the spiral formation may be cut into rings of one or more convolutions each."

Defendants contend: (1) That the amendment of the patent is new matter, and invalid; and (2) that the object of the Cords patent, according to the teaching of the same, is the production of a split annulus or packing ring, whereas the object of the defendants' machine is the production of a helix; (3) that plaintiff's apparatus is inoperative to produce the object of the patent, to wit, a split annulus; (4) that the method claims 10, 11, and 12 are invalid because they are for the mere function of a machine; (5) that defendants have not infringed plaintiff's apparatus claims; (6) that the Cords patent is clearly anticipated in the prior art.

The patents introduced in evidence by the defendants, in support of their contention that there is nothing new or novel in either apparatus or methods of the Cords claims, disclose bending machines of two general types, for bending metal strips on edge. The first type consists of apparatus for bending by winding the material on a mandrel. The second type consists of apparatus for bending by feeding a metal strip through guides or grooves to a deflecting arbor or coiling roll, either stationary or revolving, which applies pressure to the edge of the material and effects curvature thereof. In some of the machines of the latter type, the feeding rollers are grooved on their peripheries, and sides of the grooves constituting guides, and in co-operation with the arbor or coiling roll, afford lateral support to the strip during the bending operation; in others, the guides are stationary with feeding rollers operating independently thereon, and such guides, in co-operation with the bending arbor or coiling roll, afford lateral support to the strip. The first type is shown in the White patent, No. 1,064,269, issued June 10, 1913, and in the White patent, No. 1,107,005, issued August 11, 1914, both for the manufacture of piston rings. The second or deflecting type, having grooves on the peripheries of the feeding rollers, is shown by Laidlaw patent, No. 456,829, issued July 28, 1891, for forming bars into

helices, the weight of the material operated upon being limited only by the size of the rollers in use on the machine; Kling patent, No. 585,214, issued June 29, 1897, for bending plane-faced bars or beams and especially flanged beams; Diescher patent, No. 629,496, issued July 25, 1899, for bending structural shapes, such as angle bars, I-bars, channels, etc.; Erickson patent, No. 965,171, issued July 26, 1910, for bending angle bars or pipes; Ekman patent, No. 1,602,399, issued October 12, 1926, for bending pipe. This type is also disclosed in the machine manufactured in 1922 by Sleeper & Hartley, Inc., at Worcester, Mass., photographs of which are designated as defendants' depositions, Exhibits Nos. 23, 23a, 23b, and 23c, for coiling wire on edge. The second or deflecting type, having stationary guides with feeding rollers operating independently thereon, is shown in Garrett patent, No. 1,560,228, issued November 3, 1925, for bending lockwashers; Sleeper patent, No. 1,761,279, issued June 3, 1930, for bending lock washers; Sleeper patent, No. 1,266,070, issued May 14, 1918, for coiling wire on edge; and Sinclair patent, No. 1,407,891, issued February 28, 1922, for coiling wire on edge. This general type is also illustrated in the circulars of machines manufactured by Sleeper & Hartley, Inc., Bulletins Nos. 320, 328, 339, and 428, dated respectively April, 1927, June, 1920, January, 1930, and January, 1930.

The second type with revolving guides and arbors or coiling roll disclosed by the Laidlaw, Kling, Diescher, Erickson, and Eckman patents, and by circular No. 395, July 1922, of Sleeper & Hartley, Inc., defendants' deposition Exhibit No. 23, consists of machines having bending elements composed of a centrally positioned roller with a groove on the periphery thereof, with two other grooved rollers adjustably mounted about said centrally positioned roller. These elements appear incorporated in the Cords patent, claims 1, 3, and 5. Said rollers are geared together and operate from said centrally mounted roller, to which said central roller the power for operation is applied (Cords patent, claims 1 and 3). Each of said rollers is grooved on its periphery in alignment and on the same plane (Cords patent, claims 1, 3, and 5). One or both of said adjustably mounted rollers are movable about said centrally positioned roller to effect the formation and dimensions of

curvature desired (Cords patent, claims 1 and 3). Adjustments to accommodate material in the channel through which the material passes in the formation process may be effected in the Laidlaw and Eckman machines, and in said Sleeper & Hartley machine disclosed in said circular No. 395, by the substitution of rollers having grooves of the requisite size for the amount of dish desired. The Kling, Diescher, and Erickson patents have adjustments in the groove on the bending rollers. The Kling and Erickson machines have screw thread adjustments to regulate the size of the pass. The width of the groove in the Diescher machine is regulated by the use of shims or washers (Cords patent, claims 5, 8). The process of bending in the Laidlaw, Kling, Diescher, Erickson, and Eckman patents consist of feeding the material to be bent between the centrally operated roller and one of said adjustable rollers to engage a third roller or arbor or coiling roll which operates to apply pressure to the edge thereof to deflect said material to the desired curvature; the sides of the groove in said rollers operating to give the material being worked upon lateral support during the bending operation and to control the dish of the same. This method appears incorporated in Cords patent, claims 10, 11, and 12.

In bending machines having stationary guides with feeding rollers operating independently thereof, as illustrated by the Sleeper & Hartley machine, photograph, defendants' deposition, Exhibit No. 2, and by Garrett, Sinclair, Sleeper No. 1,266,070, Sleeper 1,761,279 patents, the bending elements of the machine consist of feeding rollers forcing the material through a grooved guide to a deflecting arbor or coiling roll where application of pressure to the edge thereof imparts curvature to the material operated upon. The groove in the guide is formed to give lateral support to the material approaching the arbor or coiling roll. The arbor or coiling roll and adjacent parts of the machine form a pass affording lateral support to the material in the bending process. In this type of machine, guides and arbors or coiling rolls to accommodate the varying width of the material operated upon are provided. The rollers, guides, and arbors or flanged coiling roll perform the same functions and consist of substantially the same elements, combined in substantially the same way, to produce substantially the same results as the grooved bending rollers in the Laidlaw, Kling, Diescher, Erickson, Eckman, and Cords patents. It is obvious that these are mechanical equivalents. Wine Ry. Appliance Co. v. Baltimore & O. R. Co. (C.C.A.) 78 F.(2d) 312.

The object of plaintiff's device is the production of a piston ring of a distorted formation, in that the lateral uniform dishing or tilting shape is intentionally permitted in the passage of the material through the wider grooves of the rollers. The prior art, as shown by all of the patents referred to, discloses that the method of bending wire on edge by the use of two or more rolls or equivalents positioned in a machine engaging the wire and directing the same through the rolls adjusted to impart the circular form desired has long been employed in the construction of bending machines. Plaintiff's machine carries its guides on the periphery of its rollers, as do the Laidlaw, Kling, Diescher, Erickson, and Eckman apparatus, and the Sleeper & Hartley, Inc., machine, Circular No. 395. In plaintiff's device, the gearing of the rollers is carried on the periphery of the rolls. In the patents and circular last specified, the gearing is separate from said rolls, but performs the same function in the same way, and also constitutes a mechanical equivalent.

The degree of dishing or tilting of the metal strip in the bending process is determined by the width of the grooves through which material many times wider than its thickness passes edgewise during the bending operation. No mechanical element in the machine creates such formation. The testimony of Mr. Hartley, of Mr. Doble, the expert witness for defendants, of Mr. Stevens, and the plaintiff himself is in accord, that the dishing or tilting configuration is inevitable in the process of bending the material on edge, a natural phenomenon due to the stresses set up in the material as it is bent. It appears from the evidence that such distortion has long been known in the art. This tendency of distortion has been encountered and controlled by Sleeper & Hartley, Inc., in their machines manufactured for the making of lockwashers and coiled springs, since 1913. It appears from the evidence that the amount of dish or distortion is in direct proportion to the difference in thickness of the material

operated upon and the width of the groove in the roller or guides of the machine; that dishing cannot be entirely avoided in the operation of bending machines for the reason that if no space for play is left, in the guides or grooves, material inserted therein will jam the machine.

The Sleeper & Hartley, Inc., Bulletin No. 395, dated July, 1922, displays a hand-cranked apparatus designed by said firm, and described as a sturdy and strongly constructed machine adapted to be used in the production of close coiled spirals, from 10″ to 40″ in diameter, from wire ¼″ to ½″ diameter. This firm manufactured an apparatus of this design, and sold the same in Boston in 1926. The machine is shown by the cut on said Circular No. 395:

The operation of this machine is described on page 41 of the Hartley deposition in evidence, as follows: "Central roll A. is geared at the rear to the crank gear and in turn drives the two subsidiary coils B. and C. The adjustment of these two subsidiary rolls to produce either a larger or smaller helical form is determined by the rotation of the adjusting screw D. operated by hand wheel E. which has the effect of bringing these rolls further apart or closer together as may be desired. The bending rollers are grooved."

Comparing this machine with the apparatus disclosed in the Cords patent, both machines have a centrally located roller with a groove on the periphery thereof, about which are arranged two grooved rollers adjustably mounted on the line of an arc around the axis of said centrally positioned roller—the groove on the bending rollers of the Cords machine is adjustable, whereas no means for adjustment of the size of the slot is provided on the Hartley machine, substitution of rollers being required for varying sizes of materials. The rollers on the Cords machine are cogged on their peripheries and operate together; whereas, on the Hartley machine, the intermeshed cogged gearing driving the rolls is on the opposite ends of shafts on which the rollers are placed, at the rear of the machine. Both machines operate on the same principle, viz., the three rollers are geared to operate together; the material to be operated upon is fed through an entering groove between the central roller and one of the adjustable rollers, thence between the central roller and the other adjustable roller, which applies pressure to the edge of the material to form a helix of the desired diameter; the groove in the central roller and the two adjustable rollers may be wider than the thickness of the material, so that as the material is fed through the rolls it will tilt into dished form. The purpose of the grooves on the rolls is to control this dish so that the ring will be produced with uniformity throughout. This is the principal feature emphasized in the Cords patent, as stated by the plaintiff's expert witness Mr. Stevens. The mechanical differences between the Cords machine and the Sleeper & Hartley machine, described in said Circular 395, consists of the mechanical adjustments noted, viz., the difference in the position of the gearing, and the use of rollers with various grooves as required, which perform the same functions and effect the same results, to wit, the formation of a spiral or helix of metal ribbon from which dished piston rings may be cut (claims of Cords patent 1, 3, 4, 5, 10, 11, and 12).

■ Where substantially the same elements producing, or capable of producing, the same results are found in earlier patents or machines, known and in commercial

use, a device or apparatus embodying the same is anticipated, and is not patentable. 48 C.J. 28, § 27. It appears from the testimony that with proper mechanical adjustments, most, if not all, of the machines described in the foregoing patents can be utilized for the manufacture of dished piston rings.

An instrument used for one purpose may be effective as an anticipation of an invention consisting of the use of a substantially identical instrument for another purpose, if the new use be so nearly analogous to the former that the applicability of the means to its new use will be obvious to persons skilled in the art. 48 C.J. p. 33, § 32; 48 C.J. p. 77, § 84; M. & B. Mfg. Co. v. Munk et al. (C.C.A.) 77 F.(2d) 261.

The evidence in this case clearly establishes that the apparatus, methods, and functions of the Cords patent were incorporated in patents and in machines in commercial use prior to the Cords application, and are anticipated in the prior art, and that said machines will produce piston rings as described in the Cords patent by the mere exercise of mechanical skill. It is therefore unnecessary to differentiate the teachings of the Cords patent, as contended by both plaintiff and defendant, or to consider the effect of the amendment to the application, the validity of the method claims, or the utility of the plaintiff's machine, and all of the claims of the Cords patent in controversy are held invalid as anticipated.

Findings and conclusions in accordance with the foregoing, and form for decree thereon, may be prepared and submitted.