### ANTONSEN v. HEDRICK.*
### No. 8235.

Circuit Court of Appeals, Ninth Circuit.
April 1, 1937.

Clarence W. Pierce, of Seattle, Wash., for appellant.

C. O. Fenlason, of Portland, Or., for appellee.

Before DENMAN, MATHEWS, and HANEY, Circuit Judges.

MATHEWS, Circuit Judge.

This appeal is from a decree dismissing a bill of complaint charging appellee with infringing appellant's patent No. 1,-731,967 for improvements in machines for shredding paper and manufacturing paper excelsior. Appellant's brief states that the three claims alleged to be infringed are 1, 2 and 7, reading as follows:

"1. In a paper shredding machine, the combination of a pair of parallel and oppositely rotated spindles, each mounting

*Rehearing denied May 3, 1937.

a plurality of intermeshing, bevel-edged discs, and means for bodily shifting the discs of either group in the axial direction of their spindles for the purpose of adjusting their spaced relation with the discs of the other group.

"2. In a paper excelsior machine, the combination of a pair of oppositely rotated parallel spindles, each having a plurality of bevel-edged discs fixedly mounted thereon, the discs of said spindles intermeshing with their edge sides adjacent but not touching, and means synchronized with the spindles for conveying and feeding the stock between said intermeshing discs."

"7. The method of manufacturing paper excelsior and the like which consists of tearing sheets of paper stock into narrow strips and separating said strips and piling them in haphazard fashion."

Appellant's patent was applied for on August 30, 1926, and was issued on October 15, 1929. Appellee is alleged to have infringed this patent by using a paper shredding machine which was constructed by Claude C. Rafter in 1923, was sold by Rafter to C. A. Wheeler in 1924, was operated by Wheeler from 1924 to 1929, was sold by Wheeler to appellee in 1929, and was thereafter operated by appellee. Appellee's machine and others like it had been constructed and successfully operated for more than two years before appellant's patent was applied for.

Appellant concedes that, as originally constructed, appellee's machine could not have infringed appellant's patent, but contends that said machine has been "mechanically changed" by appellee so as to embody appellant's invention, thus infringing his patent. Specifically, appellant's contention is that, as originally constructed, the bevel edges of appellee's machine were in facial contact with each other and did not, as do those of the patented machine, have spaces between them, and that, consequently, instead of tearing paper into strips having torn or "feather" edges and piling them in haphazard fashion, as the patented machine does, appellee's machine would merely cut the paper into strips having smooth edges, but that, after disclosure of appellant's invention, appellee's machine was reconstructed and made like the patented machine in these respects. The trial court did not so find. On the contrary, it found:

". . . That the machine . . . constructed by Rafter, from the very inception of power use, which occurred in about August or September of 1923, continuously down to the date hereof, produced what is known as torn feather edge excelsior, which was done by passing a newspaper or other like or suitable paper material, through a pair of parallel and oppositely rotated spindles, each mounting a plurality of intermeshing bevel edge discs. Even if the bevel edge discs were adjusted to be in facial contact, when the machine was fed with a few thicknesses of paper, four or upwards, there would be a shifting of the upper discs so as to take the same out of . . . facial contact with the lower discs. This separation was a natural incident and quality of the machine, and all of the [Rafter] machines produced torn excelsior. The shifting effect was due to the fact that the upper spindle was mounted so as to be yieldable in a longitudinal direction, and there were means disposed on the upper spindle, namely: a nut, so that by turning the same an adjustment could be made to effect a space relationship between the sets of intermeshing discs. [The] Rafter machine, when power was applied to it, which was done as early as August or September, 1923, manufactured paper excelsior by tearing the sheets of paper stock into narrow strips and discharging them from the machine and piling them in a haphazard fashion, and the strips were themselves more or less separated, one from the other. . . . It is very clear that from the very inception, Rafter's machine operated successfully under power, and the paper excelsior produced thereby was of great utility, liked by the trade, and there is no substantial, if any difference between the paper excelsior first produced by Rafter on his earliest power machine, as well as the others later built, and that which is now produced by [appellant's] machine, or any other paper shredding machine. The evidence shows that, in actual fact and practice, the discs on the Rafter machines were so adjusted . . . as not to be touching, but to have a degree of separation varying from approximately 1/32nd to 1/16th of' an inch. . . .

". . . The contiguous intermeshing discs [of the Rafter machines] were not operated with the contiguous discs in facial contact, nor were they adjusted to

so operate, even when being operated without load. Rafter did not construct his machine with great precision, and without precision it would have been impossible to have all of the contiguous discs in facial contact, even though such was desired. In fact and in practice, the said Rafter machines, from the time power was applied in the operation thereof, were adjusted so as to have a clearance or a separation between the surface sides of the contiguous discs, and this separation was intentionally made by the parties, the means and manner of making such adjustment [being] understood and appreciated by all coming in contact with the machines. [It] was a very small matter to adjust the machine so as to obtain the amount of desired separation between the surface edges of the contiguous intermeshing discs, and it was a very simple matter for any ordinary mechanic to make the upper spindle of the Rafter machine fixedly mounted, instead of having it yieldedly mounted in a longitudinal direction, as constructed by Rafter. Various of the purchasers intentionally varied the degree of separation between the mentioned discs, so as to produce rougher feather-edged excelsior if it were particularly desired."

These findings are amply supported by the evidence. Of the twenty-seven witnesses who testified, seventeen testified in open court and were seen and heard by the trial judge, who had also the advantage of seeing and examining the accused machine. His findings, therefore, unless clearly wrong, should not be disturbed. Reinharts v. Caterpillar Tractor Co. (C.C.A.9) 85 F.(2d) 628, 630; Diamond Patent Co. v. Webster Bros. (C.C.A.9) 249 F. 155, 158. See, also, Neukom v. North Butte Mining Co. (C.C.A.9) 84 F.(2d) 101; Hill v. Douglass (C.C.A.9) 78 F.(2d) 851, 853; National Reserve Ins. Co. v. Scudder (C.C.A.9) 71 F.(2d) 884, 888; Easton v. Brant (C.C.A.9) 19 F.(2d) 857, 859. They are not clearly wrong, but are, we think, clearly correct. The evidence convinces us, as it did the trial court, that appellee's machine, constructed in 1923, has not been reconstructed or "mechanically changed," and that appellant's patent, applied for in 1926 and issued in 1929, is not infringed thereby. Whether appellant's patent is valid or invalid, we need not and do not decide.

Decree affirmed.