**CORDS v. COIL MFG. CO. et al.***

No. 8554.

Circuit Court of Appeals, Ninth Circuit.

May 27, 1938.

A. W. Boyken, Mark Mohler, and Carroll A. Gordon, all of San Francisco, Cal., for appellant.

Lyon & Lyon, Frederick S. Lyon, and Richard F. Lyon, all of Los Angeles, Cal., for appellees.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

MATHEWS, Circuit Judge.

This appeal is from a decree dismissing the bill of complaint in a suit by appellant against appellees for infringement of patent No. 1,919,584, issued to and owned by appellant.

The patent was applied for on February 4, 1931, and was issued on July 25, 1933. As stated in his application, appellant's claimed invention "relates to methods and apparatus for conveniently making packing rings[1] by hand from straight bands of metal." The patent contains twelve claims. The bill does not state which claims were infringed, but the case was tried below and argued here upon the theory that claims 1, 3, 4, 5, 8, 10, 11 and 12 are the only ones involved. Claims 1, 3 and 4 read as follows:

"1. An apparatus for bending a thin relatively wide blank[2] edgewise into an annular ring comprising a pair of feed rollers having toothed portions intermeshing and forming a groove designed to receive the blank, a roller bending die having a groove that may be disposed substantially in alinement with said roller groove, means to shift said die with respect to said rollers, and means to rotate said rollers to advance the blank and to cause it to be bent into

---

*Rehearing denied Sept. 7, 1938.

[1] Packing rings, also called sealing rings, are used on pistons of internal combustion engines and, when so used, are called piston rings.

[2] Meaning, obviously, a metal blank.

annular form by said roller die during its advancement."

"3. An apparatus for bending a substantially flat metal blank, having a width greatly in excess of its thickness, edgewise into the form of an annular ring, said apparatus comprising a frame, a pair of rollers supported by said frame and having matched grooves cooperating to form a pass for receiving the blank with the lateral bounding planes of said pass normal to the roller axes and forming a space of a width greater than the thickness of the entering flat blank, bending means carried in predetermined position relative to said frame to impart a given final shape to the ring, and means for driving one of said rollers.

"4. An apparatus for bending a strip of relatively thin metal into the form of a light resilient piston ring, said apparatus comprising a set of cooperating feeding and shaping rollers, and means provided by said rollers for imparting a uniformly dished shape to the ring whereby the latter is given an overall thickness which is greater than the thickness of the metal which forms the said ring."

Each of these claims describes an apparatus for bending a strip of metal into the form of a ring, meaning, we think, a single, individual ring. Appellees have not made, sold or used any such apparatus. Theirs is an apparatus for bending a strip of metal into a continuous spiral or coil of many convolutions. No such apparatus is described in any of the claims in suit.

Claim 5 reads: "In an apparatus for bending a strip of thin metal edgewise into the form of an annular ring, means forming a pass of greater width than the thickness of the metal for receiving the strip during its passage through the apparatus, and means for varying the width of said pass to cause more or less predetermined lateral distortion of the strip as said strip is being bent edgewise into annular form." Here, also, the apparatus referred to is an apparatus for bending a strip of metal to form a single, individual ring. Appellees have not, in any such apparatus, made, sold or used the means described in claim 5, or any means whatever.

Claim 8 reads: "In subcombination, in an apparatus for reshaping an elongated piece of material, a rotatable member provided with an external set of teeth, and means disposed adjacent said teeth on said member for cooperation with one side of the set of teeth to form a pass for the piece of material, said means comprising a second set of teeth adjustable toward and from the first mentioned set to vary the size of said pass." Appellees have not, in subcombination or otherwise, made, sold or used the means described in claim 8, or any equivalent means.

Claims 10, 11 and 12 read as follows:

"10. The method of making a dished piston ring from a band of metal of a width greatly in excess of its thickness which consists in bending the band of metal into annular form on lines transverse to the width of said band in a manner permitting the resultant compression of the metal adjacent the inside of the ring and the resultant tension of the metal adjacent the outside of the ring to draw said band into a slightly dished form.

"11. The method of making a dished piston ring from a band of flat metal of a width greatly in excess of its thickness, which consists in bending the band into annular form by application of pressure to the edge thereof to bend the band on lines normal to the width of the band while maintaining the other surfaces free of pressure so as to cause the band to assume a dished form as an incident to the bending operation.

"12. The method of making a dished piston ring from a band of metal of a width greatly in excess of its thickness, which consists in bending the band into annular form by application of pressure to the edge thereof to bend the band on lines normal to the width of the band while maintaining the other surfaces free of pressure so as to cause the band to assume a dished form as an incident to the bending operation, and in limiting the extent of lateral deflection of the strip so as to determine the extent of dishing of the ring."

Appellees have not used any of the methods described in these claims. Their method of making piston rings is to cut into pieces of suitable length a spiral or coil formed from a metal strip, as mentioned above, and then to grind and reshape such pieces into piston rings. No such method is described in any of the claims in suit.

We hold, therefore, that, properly construed, the claims in suit have not been infringed by appellees. Whether, when so construed, the claims are valid or invalid, we need not and do not decide. Compare Antonsen v. Hedrick, 9 Cir., 89 F.2d 149, 151.

If given the broader construction contended for by appellant, the claims would be invalid for the reasons stated in the trial court's opinion (D.C., 15 F.Supp. 359), but we do not think such construction proper or permissible. Hence, we conclude, the bill should have been dismissed, not on the ground of invalidity, but on the ground of non-infringement only.

The decree is modified by striking therefrom the declaration that the claims in suit are invalid, and, as thus modified, is affirmed.