## LEISHMAN v. ASSOCIATED WHOLESALE ELECTRIC CO.

### No. 9970.

Circuit Court of Appeals, Ninth Circuit.

Aug. 11, 1943.

John Flam, of Los Angeles, Cal., for appellant.

Leonard S. Lyon, of Los Angeles, Cal., and Gibson Yungblut, of Cincinnati, Ohio, for appellee.

Before MATHEWS, HANEY, and STEPHENS, Circuit Judges.

MATHEWS, Circuit Judge.

Appellant, LeRoy J. Leishman, brought an action against appellee, Associated Wholesale Electric Company, for infringement of claims 7–11 of reissue patent No. 20,827.[1] Defenses were that the claims

---

[1] A reissue of patent No. 2,108,538.

were invalid, and that, if valid, they were not infringed. The District Court held the claims invalid[2] and, on May 1, 1941, entered judgment dismissing the action. From that judgment an appeal was taken on September 4, 1941. We dismissed the appeal as not having been taken in time.[3] The Supreme Court reversed our judgment and remanded the case for decision on the merits.[4]

The original patent (No. 2,108,538) was applied for by appellant on December 15, 1934, and was issued to him on February 15, 1938. The reissue patent (No. 20,827) was applied for by appellant on May 23, 1938, and was issued to him on August 16, 1938. The original patent consisted of a specification, a drawing and six claims (claims 1–6). The specification, the drawing and the six claims of the original patent were incorporated, without change, in the reissue patent. The reissue patent included six additional claims (claims 7–12). Otherwise, the original and the reissue were identical.

■ This action was commenced on September 12, 1938. On January 16, 1939, while the action was pending in the District Court, claim 5 was disclaimed in its entirety.[5] Hence both the original patent and the reissue must be construed as if claim 5 had never been included in either;[6] for the disclaimer "speaks from the date of the original patent."[7]

Appellee contends that claims 7–11 of the reissue patent are not for the same invention as the original patent and hence are invalid. The contention is based on § 4916 of the Revised Statutes, 35 U.S.C.A. § 64, which provides: "Whenever any patent is wholly or partly inoperative or invalid, by reason of a defective or insufficient specification, or by reason of the patentee claiming as his own invention or discovery more than he had a right to claim as new, if the error has arisen by inadvertence, accident, or mistake, and without any fraudulent or deceptive intention, the commissioner shall * * * cause a patent for the *same invention*,[8] and in accordance with the corrected specification, to be reissued * * *."

■ Thus a reissue patent must be for the same invention as the original patent. Otherwise it is invalid.[9] An original patent and a reissue patent are not for the same invention unless what is covered by the reissue was disclosed in the original and was intended to have been covered and secured by the original.[10] And this intention "must appear from the face of the instrument."[11] Hence the questions here to be considered are whether what is covered by claims 7–11 of the reissue patent was disclosed in the original patent, and whether it appears from the face of the original that what is covered by claims 7–11 of the reissue was intended to have been covered and secured by the original.

The specification of the original patent states that the invention therein described "relates to improvements in automatic apparatus for turning rotatable objects about their axes to predetermined positions and more particularly to means whereby a plurality of such objects may be immediately and simultaneously rotated to any one of several pre-selected positions or 'settings' which may be different for each rotated object;" and that—

"The purposes of this invention are to provide simple apparatus for turning dials, shafts and the like to the particular settings required in using an instrument or machine for a definite task; to afford means whereby a plurality of such rotatable elements may be simultaneously turned

---

[2] Leishman v. Associated Wholesale Electric Co., D.C., 36 F.Supp. 804.

[3] Leishman v. Associated Wholesale Electric Co., 9 Cir., 128 F.2d 204.

[4] Leishman v. Associated Wholesale Electric Co., 318 U.S. 203, 63 S.Ct. 543, 87 L.Ed. ——.

[5] The disclaimer states that appellant has reason to believe that, through inadvertence and without fraudulent or deceptive intention, claim 5 may be too broad, and that he therefore "enters this disclaimer to claim 5."

[6] Dunbar v. Myers, 94 U.S. 187, 194, 24 L.Ed. 34; Schwarzwalder v. New York Filter Co., 2 Cir., 66 F. 152, 158; Oliver Machinery Co. v. Gellman, 6 Cir., 104 F.2d 11, 12.

[7] Altoona Publix Theatres v. American Tri-Ergon Corp., 294 U.S. 477, 491, 55 S.Ct. 455, 461, 79 L.Ed. 1005.

[8] Italics supplied.

[9] United States Industrial Chemicals v. Carbide & Carbon Chemicals Corp., 315 U.S. 668, 675–681, 62 S.Ct. 839, 86 L.Ed. 1105.

[10] United States Industrial Chemicals v. Carbide & Carbon Chemical Corp., supra.

[11] United States Industrial Chemicals v. Carbide & Carbon Chemicals Corp., supra [315 U.S. 668, 62 S.Ct. 844, 86 L.Ed. 1105].

each to a pre-selected position which may be different from that to which any other such element is being turned; to provide a simple manually operated control for accurately returning such rotatable elements to any desired previous position; to provide mechanism whereby a single manual operation will cause a plurality of rotatable members each to be turned to any one of a group of pre-selected positions; to provide means for simultaneously setting the dials of a radio receiving set and a television receiving set; to make it possible for a single manual operation to tune either a radio set or a television set, or both; and to afford means whereby the apparatus may easily be adjusted so that a definite manual operation will cause the desired rotatable element to be turned to a desired position.

"The application of this invention to radio and television makes it possible to 'tune in' a radio broadcasting station and its associated television broadcasting station in far less time and with much less bother than would otherwise be required. The large number of pictorial elements needed in television for the transmission of a single detailed image within the time period of the persistence of vision, makes the use of short wave desirable; and further, the governments of various countries have allotted certain frequencies in the short wave bands for this purpose. For these and other reasons, the satisfactory transmission of both sound and vision by radio waves requires that they be transmitted on different carrier frequencies. To receive both the sound and the associated television, the radio receiving set must be tuned to the frequency on which the radio broadcasting station is transmitting, and the short wave television receiver must be tuned to the different frequency of the television broadcasting station which transmits the images of the scene at which the radio program originates. The dial settings for these stations are entirely different, and it is therefore impractical to turn the dials synchronously by any connecting means, such as gears, belts or a common shaft. The present invention makes it possible to accomplish this double tuning by a single manual operation."

A combination embodying this invention is illustrated in the original patent drawing, here reproduced.

The specification states that Fig. 1 of the drawing "shows a pair of concentric

Feb. 15, 1938.    LE ROY J LEISHMAN    2,108,538
MEANS AND METHOD FOR TURNING ROTATABLE OBJECTS TO PREDETERMINED POSITIONS
Original Filed Dec 15, 1934

Fig. 1

Fig. 2

Fig. 3

INVENTOR
Le Roy J Leishman

rectangular rockers, each attached to a different control shaft;" that Fig. 2 "shows a side view of the rockers of Fig. 1, together with a positioning lever assembly having adjustable tappets for engaging the rockers;" that Fig. 3 "is a section of the lever assembly shown in Fig. 2, taken on line 58-59;" and that—

"The rocker 48, Fig. 1, is pivoted at one end on an immovable shaft 49 held in support 50 by screw 51. The other end is attached to shaft S by pin 52. Shaft S has a journal 53 and may be considered as connected to a radio tuning device. Rocker 54 is free to pivot on shafts S and 49, but has a hub 55 attached by screw 56 to shaft 25 of a television tuner, not shown.

"An optional modification is to omit the shaft 49 and extend control shaft 25 through the bearing of rocker 48 into journal 50. If control shaft 25 is adequately supported, the journal also may be omitted. In either case, rocker 48 must not be attached to shaft 25.

"In Fig. 2, the lever F, pivoted on rod Q, has an extension 57, also shown in Fig. 3, which is a cross section taken on line 58-59, Fig. 2. The extension 57 carries a pin 60, on which are pivoted tappets 61 and 62 having hubs 63 and 64 respectively, shown most clearly in Fig. 3. The tap-

pets are kept from coming off the pivot by nuts 65. Lever 66 straddles lever F as shown in Fig. 3, and is pivoted on rivet 67 as indicated in both Figs. 2 and 3. Lever 66 has legs 68 for engaging the hubs of the tappets. The free end of lever 66 has a flat horizontal section 69 having a hole 70. The end of lever F is shaped similar to the end of lever 66, and has a smaller hole than that in lever 66. This hole is tapped to admit the set screw 71 which passes through hole 70 in the upper lever. The set screw has a knurled top 72. When this set screw is tightened, the legs 68 of lever 66 clamp down on hubs 63 and 64, thus keeping the tappets from turning. This lever assembly is raised up from the position shown to an inoperative position by spring 73 attached to the lever 74 and to a stationary support at 75.

"To set an automatic tuner of this kind so that it will return the tuning shafts S and 25 to any angular position that may be required to bring in a pair of associated radio and television stations, the lever assembly is pressed down, set screw 71 loosened to take the tension from hubs 63 and 64, permitting the tappets to move freely, and with the lever still held down, the desired associated stations are tuned in by the regular manual tuners (not shown here) and the set-screw tightened again to fix the tappets in the positions to which they were moved by the rockers during the manual tuning operation. How the tappets or rockers move to the angular position of whichever is the fixed member, will be evident from Fig. 2. After the automatic tuner has been set in this manner, the lever may be released, permitting the spring 73 to raise the assembly out of the way of the rockers which are now free to move to other angular positions as other stations are tuned in.

"By placing the finger on the knurled knob 72 and pressing the lever down, the tappets will strike the rockers in whatever angular position they may happen to be, and will move them to the position occupied when the setting operation took place.

"When the lever assembly is all the way down, it will be observed from Fig. 2 that the pin 60 is substantially co-axial with the rockers 48 and 54, which means that in this position it is also co-axial with shafts S, 49 and 25 shown in Fig. 1. Pin 60 and shafts S, 49 and 25 are therefore all approximately equidistant from the fulcrum Q.

"If a plurality of such lever assemblies are mounted on shaft Q, each one may be set to bring in a different pair of radio and television stations."

The claims of the original patent [12] read as follows:

"1. A combination including a plurality of rotatable members having a common axis, a lever manually movable in a plane transverse to said axis, a plurality of adjustable members pivoted to said lever at a point substantially as far from the fulcrum of said lever as said axis is from said fulcrum, each of said adjustable members adapted to engage one of said rotatable members upon movement of said lever, and to move said rotatable member to a predetermined angular position, and means for fixing said adjustable members upon their pivots in predetermined angular positions at will.

"2. A combination including a plurality of rotatable members having a common axis, a first lever manually movable in a plane transverse to said axis, a plurality of adjustable members pivoted to said lever at a point substantially as far from the fulcrum of said lever as said axis is from said fulcrum, each of said adjustable members adapted to engage one of said rotatable members upon movement of said first lever and to move said rotatable member to a predetermined angular position, a second lever pivoted upon said first lever, said second lever adapted to engage said adjustable members and hold them in fixed positions with relation to said first lever, and means for tightening said second lever against said adjustable members.

"3. A combination including a rectangular rocker having two parallel sides pivoted on an axis substantially parallel to the other sides, a second rocker of like description lying within said first rocker and independently pivoted on the same axis as said first rocker, a first tappet pivotally mounted upon a lever and adapted to engage one of said rockers, a second tappet mounted upon said lever and adapted to engage the other rocker, said tappets adapted to rotate said rockers to predetermined angular positions upon movement of said lever.

---

[12] For reasons heretofore stated, the patent is construed as if claim 5 had never been included therein.

"4. A combination including a rectangular rocker having two parallel sides pivoted on an axis substantially parallel to the other two sides, a second rocker of like description lying within said first rocker and independently pivoted upon the same axis as said first rocker, a first tappet movably mounted upon a first lever and adapted to engage one of said rockers, a second tappet movably mounted upon said first lever and adapted to engage the other rocker, said tappets adapted to rotate said rockers to predetermined angular positions upon movement of said lever, and a second lever pivotally mounted upon said first lever and adapted to engage said tappets and hold them in fixed positions with relation to said first lever."

"6. In a radio communication device, a combination including: two independently rotatable control shafts; a first pair of positionable elements operatively connected with one of said shafts; a second pair of positionable elements operatively connected with the other of said shafts; an operating lever; a first and second tappet member adjustably mounted on said lever; said first tappet member adapted upon movement of said lever to engage said first pair of positionable elements; and said second tappet member adapted upon movement of said lever to engage said second pair of positionable elements."

Thus the specification of the original patent discloses a combination comprising rockers, tappets and levers, the tappets and levers constituting what the specification calls a lever assembly; and the claims of the original patent are for combinations each of which includes a lever or levers.[13] No leverless combination is disclosed or claimed in the original patent, nor does it appear from the face thereof that any leverless combination was intended to have been covered or secured thereby.

As stated before, the specification, the drawing and the claims of the original patent were incorporated, without change, in the reissue patent. Claims 7-11 of the reissue patent are new. They read as follows:

"7. In combination with the tuning mechanism of a radio apparatus, of a rotatable rocker mounted upon a shaft operatively connected with said mechanism, said rocker having two arms each extending on a different side of said shaft; means adjustably movable about a pivot and acting upon bodily movement in one direction to slidably engage either arm of said rocker and push it in one direction to an angular position at which the movement of said rocker is arrested by the collision of said means and the oppositely moving other arm of said rocker; and a spring for holding said means in a normally inoperative position; said rocker constructed so as to admit at least a portion of said means between said arms.

"8. The combination with the tuning mechanism of a radio apparatus, of a rotatable rocker mounted upon a shaft operatively connected with said mechanism, said rocker having two arms each extending on a different side of said shaft; means adjustably movable about a pivot and acting upon bodily movement in one direction to slidably engage either arm of said rocker and push it in one direction to an angular position at which the movement of said rocker is arrested by the collision of said means and the oppositely moving other arm of said rocker; and a spring for holding said means in a normally inoperative position; the axis of said means being substantially co-axial with the axis of said rocker when said means is in engagement with both of said arms.

"9. In a mechanism for angularly positioning a control of a radio device, a combination including: a rotatable rocker comprising two shoulders lying on opposite sides of the axis of said rocker; and a manually movable operating means comprising an adjustably mounted positioning element adapted upon movement of said means in one direction to engage one shoulder of said rocker and rotate said rocker to a position at which the movement of said element is arrested by the collision of said element and the oppositely moving other shoulder of said rocker; said rocker constructed to permit at least a portion of said means to pass beyond a line connecting the points on said shoulders at

---

13 The combinations covered by claims 1 and 2 include levers, but claims 1 and 2 do not mention rockers or tappets. Instead, they speak of "rotatable members" and "adjustable members." The combinations covered by claims 3 and 4 include rockers, tappets and levers. The combination covered by claim 6 includes tappets and levers, but claim 6 does not mention rockers. Instead, it speaks of "positionable elements."

which the shoulders are contacted by said means.

"10. In a mechanism for angularly positioning a control of a radio device, a combination including: a rotatable rocker comprising two shoulders lying on opposite sides of the axis of said rocker; a manually movable operating member; and a positioning element adjustably mounted on a pivot carried by said member; said element adapted upon movement of said member in one direction to engage one shoulder of said rocker and rotate said rocker to a position at which the movement of said rocker is arrested by the collision of said element and the oppositely moving other shoulder of said rocker; the axis of said element and the axis of said rocker being substantially co-axial when said element is in engagement with both of said shoulders.

"11. In a mechanism for angularly positioning a control of a radio device, a combination including: a rotatable rocker comprising two arms lying on opposite sides of the axis of said rocker; a manually movable operating member; a positioning element adjustably mounted on a pivot carried by said member; said element adapted upon movement of said member in one direction to engage one arm of said rocker and rotate said rocker to a position at which the movement of said rocker is arrested by the collision of said element and the oppositely moving other arm of said rocker; said rocker having a recess between said arms so that the axis of said element and the axis of said rocker may be substantially co-axial when said element is in engagement with both of said arms; and means operable from the external end of said member for holding said element in adjusted position."

These claims, it will be observed, are for combinations each of which includes a rocker. Whether the combinations include tappets and levers is not clear.[14] If they do not include levers, the claims are not for the same invention as the original patent and hence are invalid.[15] If they do include levers, the claims are not infringed, for the accused device contains no lever.

■ The accused device (a mechanical tuner for a radio receiving set)[16] is manufactured by the Crosley Radio Corporation and sold by appellee. It has a rocker which is the equivalent of appellant's rocker 48. It has no rocker 54 nor any equivalent thereof. It has tappets each of which is the equivalent of appellant's tappet 61. It has no tappet 62 nor any equivalent thereof. It has no lever of any kind or character. Its tappets are operated (made to engage the rocker) by means of plungers. The plungers perform a part, and only a part, of the function performed by appellant's levers F and 66.[17] The part so performed is not performed in the same way, or in substantially the same way. Hence the plungers and the levers are not equivalents.[18]

■ Since the claims, if valid, are not infringed, the question of their validity need not be decided.[19] The judgment declares that the claims "are invalid for want of invention." In the view we take, the declaration is unnecessary. As to its correctness or incorrectness, we express no opinion.

The judgment is modified by striking

[14] Neither tappets nor levers are mentioned in these claims. Instead, claims 7 and 8 speak of "means adjustably movable about a pivot;" claim 9 speaks of "a manually movable operating means comprising an adjustably mounted positioning element;" and claims 10 and 11 speak of "a manually movable operating member" and "a positioning element adjustably mounted on a pivot carried by said member." What these "means," "elements" and "members" consist of the claims do not say.

[15] U. S. Industrial Chemicals v. Carbide & Carbon Chemicals Corp., supra.

[16] Exemplars of the accused device are in evidence as appellant's exhibits 10, 22 and 25.

[17] Appellant's levers have a double function—that of operating the tappet 61 and that of operating the tappet 62. The latter function is not performed at all in the accused device.

[18] Burr v. Duryee, 1 Wall. 531, 573, 17 L.Ed. 650; Werner v. King, 96 U.S. 218, 230, 24 L.Ed. 613; Union Paper-Bag Mach. Co. v. Murphy, 97 U.S. 120, 125, 24 L.Ed. 935; Goodyear Dental Vulcanite Co. v. Davis, 102 U.S. 222, 230, 26 L. Ed. 149; Brown v. Davis, 116 U.S. 237, 249, 6 S.Ct. 379, 29 L.Ed. 659; Westinghouse v. Boyden Power-Brake Co., 170 U.S. 537, 569, 18 S.Ct. 707, 42 L.Ed. 1136; Barley v. G. E. Witt & Co., 9 Cir., 261 F. 77, 85; Wire Tie Mach. Co. v. Pacific Box Corp., 9 Cir., 102 F.2d 543, 556; Id., 9 Cir., 107 F.2d 54, 56.

[19] Antonsen v. Hedrick, 9 Cir., 89 F.2d 149, 151; Cords v. Coil Mfg. Co., 9 Cir., 97 F.2d 68, 70; L. McBrine Co. v. Silverman, 9 Cir., 121 F.2d 181, 183.

728

therefrom the above quoted declaration[20] and, as thus modified, is affirmed.

HANEY, Circuit Judge, did not participate in the consideration or decision of this case.

[20] Cf. Cords v. Coil Mfg. Co., supra; L. McBrine Co. v. Silverman, supra.