MASON CORPORATION et al. v. HALLI-
BURTON et al.

No: 2113.

Circuit Court of Appeals, Tenth Circuit.

March 18, 1941.

Rehearing Denied May 2, 1941.

A. A. Davidson, of Tulsa, Okl. (Eldon J. Dick° and Sam Clammer, both of Tulsa, Okl., on the brief), for appellants.

Earl Babcock, of Duncan, Okl. (Ben F. Saye, of Duncan, Okl., on the brief), for appellees.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

PHILLIPS, Circuit Judge.

The Mason Corporation and Richard C. Mason brought this suit against Erle P. Halliburton and Halliburton Oil Well Cementing Company for alleged infringement of patent No. 1,408,113 applied for January 28, 1921, and granted February 28, 1922, to Richard C. Mason. The defenses were invalidity and noninfringement.

The patent in suit covers a well measuring device. It comprises a rectangular-shaped frame mounted on the upper end of the well casing. One side of the frame is convex and attached on the inside thereof is a U-shaped bracket. The upper and lower ends of the frame are formed with aligned recesses for the reception of the well cable or any other suitable measuring line. A pair of spaced parallel bearing plates are secured at their ends to the opposite edges of the end pieces of the frame. Three axles are mounted in the bearing plates. Three measuring pulleys aligned vertically are mounted on these axles. A sprocket wheel is rigidly mounted on each of such axles and the sprocket wheels are engaged by a continuous sprocket chain which causes all the measuring pulleys to rotate together in the same direction. The end of the axle carrying the intermediate measuring pulley is extended through one of the bearing plates and is adapted to be connected with the operating member of a length-indicating register.

Between the bracket and the measuring pulleys, two guide plates are secured at their ends to the opposite edges of the end pieces of the frame. A triangular-shaped sliding block is mounted between these members. Two tensioning pulleys, positioned in the same vertical plane as the measuring pulleys, are mounted on axles carried by the sliding block, one tensioning pulley being intermediate of the center and upper measuring pulley, and the other being intermediate of the center and lower measuring pulley. The measuring line travels between the measuring pulleys and the tensioning pulleys through the grooves thereof. The sliding block is movable by means of a screw extending through the side piece of the frame and the bracket. The outer end of the screw is rigidly attached to an operating crank. The inner end of the screw is attached to the block. By turning the crank the tensioning pulleys may be advanced toward the measuring pulleys urging the cable or measuring line into engagement with the measuring pulleys. By adjusting the screw any desired tension of

the line on the measuring pulleys may be obtained.

A coil spring mounted on the screw is confined between an annular member securely connected to the screw at a point where it extends through the bracket, and the adjacent edge of the sliding block. This provides a yieldable driving connection between the screw and the block so that the tension will yield when an enlargement of the cable or measuring line passes through the grooves of the measuring and tensioning pulleys.

The measuring line is lowered into the hole by means of a weight at the end thereof and through the force of the gravity. As the measuring line descends, the measuring pulleys rotate, registering the length in the measuring device. The tension is necessary in order to stop the downward movement of the measuring line when the weight reaches the bottom of the hole.

The patent in suit contains five claims. The elements of the claims are set out in note 1.[1]

The alleged infringing device is manufactured under patent No. 1,692,037, applied for June 15, 1926, and issued November 20, 1928, to E. P. Halliburton.

It comprises a reel on which piano wire is coiled. The open end of the wire is provided with a weight. The reel is mounted on a post. A horizontal arm is pivotally mounted at the upper end of the post. At the end of the arm nearest the well, the upper end of a vertical bracket is connected pivotally to permit oscillation of the bracket. The measuring wheel is mounted on this bracket. By means of the pivotally mounted arm and bracket the measuring

[1] Claim 1.
(1) A frame having bearing plates;
(2) Pulleys carried by the plates;
(3) Means connecting the pulleys;
(4) A head having a plurality of rollers adapted for urging a cable into driving engagement with the pulleys;
(5) A tensioning screw threaded through the frame and connected with the head;
(6) A hand-operated crank rigidly connected to the screw and adapted to be rotated for urging the tensioning rollers in the direction of the pulleys.

Claim 2.
(1) A frame;
(2) Pulleys carried by the frame;
(3) A head having rollers adapted for urging a cable into driving engagement with the pulleys;
(4) A tensioning screw threaded through the frame and connected to the head;
(5) A crank connected to the screw and adapted to be rotated for urging the rollers in the direction of the pulleys;
(6) Means secured to the frame for guiding the rollers.

Claim 3.
(1) A frame;
(2) Pulleys carried by the frame;
(3) Means connecting the pulleys;
(4) A head having a plurality of rollers adapted for urging the cable into driving engagement with the pulleys;
(5) A tensioning screw threaded through the frame and connected to the head;

(6) Means whereby the screw may be rotated for advancing the head in the direction of the pulleys;
(7) Means secured to the frame on opposite sides of the head for guiding the head;
(8) A guide bracket secured to the frame and having an opening receiving the screw.

Claim 4.
(1) A frame having oppositely arranged bearing plates;
(2) Pulleys carried by the plates;
(3) Means connecting the pulleys;
(4) A head having rollers adapted for urging the cable into driving engagement with the pulleys;
(5) A tensioning screw threaded through the frame and connected to the head;
(6) Means connected to the screw and adapted to be rotated for urging the tensioning rollers in the direction of the pulleys;
(7) A length-indicating register operated by one of the pulleys.

Claim 5.
(1) A frame;
(2) A pulley carried thereby;
(3) A tensioning head having rollers arranged adjacent opposite sides of the pulley and adapted for urging the cable into driving engagement with the pulley;
(4) A tensioning screw threaded through the frame and connected to the head;
(5) A guide bracket carried by the frame and having an opening receiving the tensioning screw;
(6) Guiding means for the head.

wheel maintains itself in proper alignment with the wire in any direction it may travel as the unwinding of the wire from the reel occurs. The measuring wire travels from the reel under and around the periphery of the measuring wheel in the groove thereof and thence upward from the measuring wheel and over a guide pulley mounted on the upper end of the casing or tubing and thence downward through the casing into the well. The shaft of the measuring wheel is connected with the operating member of a length-indicating register. Two pressure rollers are mounted on the bracket, one positioned above and one below the measuring wheel and in alignment therewith. Tension is effected by urging the pressure rollers against the measuring wire in the groove of the measuring wheel. The shafts of the pressure wheels are carried in movable blocks mounted in guide slots and movable toward or away from the measuring wheel. The outer side of each block has an inclined face which is engaged by the inclined face of a wedge block. These wedge blocks are mounted on adjusting screws. By turning the screw, the wedge blocks may be moved forward forcing the movable blocks in the direction of the measuring wheel and causing the pressure rollers to engage the wire in the measuring wheel. The tension may be relieved by turning the screw in the opposite direction, and thus any desired tension may be obtained.

From a judgment adjudging the patent valid, but not infringed, the Mason Corporation and Mason have appealed.

The conception of a device for measuring wells by means of a measuring line and a measuring wheel connected with a registering device, was not new when the patent in suit was applied for. It was disclosed by Hudson patent No. 757,810, issued April 19, 1904.

Neither was a combination of the above elements with a tension means new. Hudson discloses pressure pulleys, the axles of which are carried by clamp frames mounted on the main frame. The pressure pulleys are mounted in alignment with the measuring pulley which is positioned intermediate of the pressure pulleys. The axles of the pressure pulleys extend through transverse slots in the main frame. A cam lever is attached to the upper end of each clamp frame. By forcing the cam lever downward, the axle of the pressure pulley may be moved in its slot toward the measuring line, causing the line to travel in an

arc instead of a straight line and forcing it into engagement with the measuring wheel. By moving the cam lever upward, the axle is freed to move in the opposite direction and the tension is relieved.

The Boatwright patent No. 530,385, issued December 4, 1894, discloses a measuring wheel, the axle of which is operatively connected with the registering device. A pressure pulley is positioned in alignment with the measuring wheel, with the ends of its spindle or axle mounted in a movable block. Bearing against one end of the movable block is a rubber buffer block which is engaged by a set screw, operating in an internally threaded passage in one side of the main frame. By turning the set screw so it will move inwardly, the rubber buffer block engages the movable block and forces the periphery of the pressure pulley toward and against the line in the measuring pulley, effecting tension. By turning the set screw in the opposite direction the tension may be relieved.

Thus, it will be seen that the novelty, if any, of the combination of the patent in suit arises from the particular means provided for effecting tension.

The tension means employed in the alleged infringing device is essentially like that disclosed by Boatwright, the only difference being that Boatwright discloses a rubber buffer block, whereas the alleged infringing device employs a wedge block. In Boatwright and the alleged infringing device, tension is effected by moving the tensioning roller into engagement with the measuring line in the groove of the measuring wheel and directly forcing the line against the periphery of the measuring wheel, whereas, in the patent in suit the pressure rollers do not directly engage the line in the measuring wheel but, by reason of their position with relation to the measuring wheel, they, when moved forward, cause the measuring line to travel in an arc rather than a straight line over the periphery of the measuring wheel, thereby effecting tension thereon. This arrangement of pressure pulleys and measuring wheel was disclosed by Hudson.

The range of equivalents depends upon the degree of invention. If the patent is primary in character, the patentee is entitled to a broad range of equivalents. On the other hand, if the patent is for a slight improvement on an old device or combination which performs the same function before as after the improvement, the

range of equivalents is narrow. In other words, the term "mechanical equivalent," when applied to the interpretation of a pioneer patent, has a broad and generous signification, but when applied to a patent for a slight improvement its meaning is narrow and limited.[2] The patent in suit marked only a slight advance or improvement over the prior art and its range of equivalents is narrow. Its range of equivalents cannot be extended to cover means which have clear antecedents in the prior art.[3]

Since Halliburton employs the particular tensioning means disclosed by Boatwright, and not the means disclosed by the patent in suit, it follows, if the patent in suit constitutes invention over Boatwright, that Halliburton does not infringe. On the other hand, if the tensioning means disclosed by Boatwright and employed by Halliburton is substantially the equivalent of the tensioning means of the patent in suit, then the Boatwright patent constitutes an anticipation, rendering the patent in suit invalid.[4]

We conclude, therefore, that the judgment dismissing the suit was right and it is accordingly affirmed.

[2] Johns-Manville Corporation v. National Tank Seal Co., 10 Cir., 49 F.2d 142, 145, certiorari denied 284 U.S. 654, 52 S.Ct. 33, 76 L.Ed. 555; National Hollow B. B. Co. v. Interchangeable B. B. Co., 8 Cir., 106 F. 693, 710; McCormick v. Talcott, 20 How. 402, 61 U. S. 402, 405, 15 L.Ed. 930; Morley Machine Co. v. Lancaster, 129 U.S. 263, 273, 9 S.Ct. 299, 32 L.Ed. 715; Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U.S. 405, 414, 415, 28 S.Ct. 748, 52 L.Ed. 1122; Magnavox Co. v. Hart & Reno, 9 Cir., 73 F.2d 433, 435; Electrol, Inc., v. Merrell & Co., 8 Cir., 39 F.2d 873, 878; Gamble-Skogmo, Inc., v. Paul E. Hawkinson Co., 8 Cir., 98 F.2d 37, 41, 42.

[3] International Harvester Co. v. Killefer Mfg. Co., 9 Cir., 67 F.2d 54, 61.

[4] Perfect Circle Co. v. Hastings Mfg. Co., 6 Cir., 88 F.2d 813, 816.