### GANTER v. UNIT VENETIAN BLIND SUPPLY CORPORATION et al.
### No. 9833.

United States District Court
S. D. California, Central Division.
March 20, 1950.

See, also, 87 F.Supp. 338.

480

Hamer H. Jamieson, Los Angeles, Cal., for plaintiff.

J. George Bragin, Hollywood, Cal., for defendants.

YANKWICH, District Judge.

The plaintiff charges infringement and seeks injunctive relief and damages. The defendant has denied infringement and, in a general way only, has challenged the validity of the patent.

I am of the view that Patent No. 2,391,150, and Reissue No. 22,989, are valid, but not infringed by the defendants' devices.

Some of the principles of law applicable were discussed at the conclusion of the trial and are not in dispute. Others were stated in the brief opinion on the application for injunction. Ganter v. Unit Venetian Blind Supply Corp., D.C.1949, 87 F.Supp. 338. And see, Pointer v. Six Wheel Corporation, 9 Cir., 1949, 177 F.2d 153.

In the final analysis, the case presents purely a question of fact.

Conceding that some of the claims read on the accused devices [1], a study of these devices, in the light of the entire evidence, leads to the conclusion that neither the Uniclip nor the Multiclip infringes because "the mode of operation is different and * * * there is no equivalency of means". Grant v. Koppl, 9 Cir., 1938, 99 F. 2d 106, 110. See, Walker on Patents, Dillard ed., Sec. 466; Flowers v. Austin-Western Co., 7 Cir., 1945, 149 F.2d 955, 958–959.

The patented device is limited in scope. Walker op. cit., Sec. 475. Whether the limitation result from the action of the Patent Office or from the limited nature of the patent itself, it must be so interpreted when applying the doctrine of equivalency. Smith v. Magic City Kennel Club, Inc., 1931, 282 U.S. 784, 790, 51 S.Ct. 291, 75 L. Ed. 707; International Harvester Co. v. Killefer Mfg. Co., 9 Cir., 1933, 67 F.2d 54, 61; E. Van Noorden Co. v. Cheney Co., 1 Cir., 1934, 75 F.2d 298, 302–303; see, Mantz v. Kersting, D.C.Cal.1939, 29 F.Supp. 706; Stewart Warner Corp. v. Jiffy Lubricator Co., 8 Cir., 1936, 81 F.2d 786, 793.

Mason Corporation et al. v. Halliburton, 10 Cir., 1941, 118 F.2d 729, 730–731, sums up the principle: *"The range of equivalents depends upon the degree of invention.* If the patent is primary in character, the patentee is entitled to a broad range of equivalents. On the other hand, if the

1. Illustrative of the 18 claims is the broadest claim, 9, which reads: "9. In a means of the class described, a horizontal support, and a resilient clip having at one end an inwardly struck securing prong, said prong being forced into the outer side of the support, and means securing the clip to said support, the opposite end of the clip extending downwardly from the support and provided at the latter end with a rod supporting means."

patent is for a slight improvement on an old device or combination which performs the same function before as after the improvement, the range of equivalents is narrow. In other words, the term 'mechanical equivalent,' when applied to the interpretation of a pioneer patent, has a broad and generous signification, but when applied to a patent for a slight improvement its meaning is narrow and limited. The patent in suit marked only a slight advance or improvement over the prior art and its range of equivalents is narrow. *Its range of equivalents cannot be extended to cover means which have clear antecedents in the prior art.*" (Emphasis added.)

The *Uniclip* has two elements not in the patented device: (1) the shoulder—as a means of suspension; (2) the tab—as a means of releasing the rod.

The *Multiclip,* already described in the prior memorandum, is (1) a double rod hanging device, manufactured to be and being used for that purpose, with (2) a tab release, which acts to install and release the rod, and (3) a shoulder which holds the clip in place.[2]

■ None of these features is present in the accused device as defined by the claims. "The claims of the patent, not the specifications, measure the invention." Smith v. Snow, 1935, 294 U.S. 1, 11, 55 S.Ct. 279, 283, 79 L.Ed. 721. See, Schriber-Schroth Co. v. Cleveland Trust Co., 1938, 305 U.S. 47, 57, 573, 59 S.Ct. 8, 83 L.Ed. 34; Smith v. General Foundry Mach. Co., 4 Cir., 1949, 174 F.2d 147, 149–151. And there is nothing in the device *as claimed* which performs these functions in the same manner. The loop does not even hold the rod in the same manner. In the patented device, the loop constricts the rod. In the accused devices, the rod is held in place by the cornice board. And the loop is so constructed as to accommodate rods of different sizes.

■ So we have elements which perform *different functions* or the same function *in*

a *substantially different way.* And infringement cannot be found unless the accused device "performs substantially the same function in substantially the same way to obtain the same result." Machine Co. v. Murphy, 1878, 97 U.S. 120, 125, 24 L.Ed. 935. See, Sanitary Refrigerator Co. v. Winters, 1920, 280 U.S. 30, 41–42, 50 S.Ct. 9, 74 L.Ed. 147; Leishman v. Associate Wholesale Electric Co., 9 Cir., 1943, 137 F.2d 722, 727.

■ The fact that all three devices have the same or part of the same ultimate result, i. e., to hold a rod, does not spell infringement. See, Walker on Patents, op. Cit., Sec. 496; Boyden Power-Brake Co. v. Westinghouse, 1898, 170 U.S. 537, 568–569, 18 S.Ct. 707, 42 L.Ed. 1136; Stebler v. Porterville Citrus Ass'n, 9 Cir., 1918, 248 F. 927; Leishman v. Associated Wholesale Electric Co., supra.

For, as said by the Court of Appeals for the Ninth Circuit in Stebler v. Porterville Citrus Ass'n, supra, 248 F. at page 930, "there appears to be such a variation of means as to avoid infringement in the features complained of." See, Jogger Mfg. Corporation v. Roquemore, 7 Cir., 1941, 118 F.2d 866, 870.

■ Indeed, if the invention were made to cover all means for holding a curtain rod, any clip or looped piece of metal or wire capable of being suspended from a cornice would infringe. So insignificant a device would not be entitled to the monopolistic benefits of the patent law. And we doubt if the Patent Office would have issued the letters patent here in suit or granted the reissue if such scope had been claimed for the device, which is denominated "window drape rod hanging means" and described in the specifications and claims as a *particular means* to hang the rod. The drawings and specifications are reproduced as appendices A and B, at the end.

Judgment will, therefore, be for the defendant.

2. For brevity, I have indicated the most distinctive differences and their functions. The findings need not be so limited, but may describe these in greater detail or indicate others referred to in the evidence, together with their functions.

# APPENDIX A

**March 23, 1948.**            **F. X. GANTER**            **Re. 22,989**

WINDOW DRAPE ROD HANGING MEANS

Original Filed March 1, 1943

FIG. 1

FIG. 3.

FIG. 4.            FIG. 5.            FIG. 2.

INVENTOR.
FRANCIS X. GANTER
BY
William B Hall
ATTORNEY.

## APPENDIX B

**(The full specifications are here given.)**

**Reissued Mar. 23, 1948**                    **Re. 22,989**

# UNITED STATES PATENT OFFICE

22,989

**WINDOW DRAPE ROD HANGING MEANS**

**Francis X. Ganter, Los Angeles, Calif.**

Original No. 2,391,159, dated December 18, 1945, Serial No. 477,589,
March 1, 1943. Application for reissue December
16, 1943, Serial No. 716,517

**18 Claims. (Cl. 160—19)**

My invention relates to a curtain or drape rod hanging or supporting means, and such means which may be used in connection with Venetian blinds, and drapery boxes.

One of the principal objects of my invention is to provide means for quickly and easily hanging a curtain or drape rod, or the drapes or curtains on such rods.

Another important object of this invention is to provide means of this class in which the rod, and the curtains or drapes depending therefrom, are resiliently supported and thereby prevented from being readily distorted when a pull is applied to the curtains or drapes.

An important object also of this invention is to provide novel, simple, and economical means for supporting a U-shaped curtain rod whereby the end portions of a drape or curtain may drape over the edges of Venetian blinds, or the like.

Still another important object of this invention is to provide means of this class for resiliently holding the ends of a U-shaped rod against the window frame or the building wall.

A still further important object of this invention is to provide a supporting means of this class whereby, when a pull is exerted on the drape or curtain, the open side of the supporting hook will be distorted toward the supporting element or wall of the supporting box or concealing cornice, thereby closing the supporting hook.

An important object also of this invention is to provide a novel, simple, and economical clip for performing the above functions.

A further important object of this invention is to provide novel means in connection with such a clip for securely fastening the same to and by the supporting decorative cornice for the drape or curtain.

With these and other objects in view, as will appear hereinafter, I have devised means for supporting a curtain or drape rod having certain novel features of construction, combination, and arrangement of parts and portions, as will be hereinafter described in detail and particularly set forth in the appended claims, reference being had to the accompanying drawings and to the characters of reference thereon, which form a part of this application, in which:

Fig. 1 is a fragmentary perspective view of the curtain or drape supporting cornice for a window, housing my curtain or drape rod supporting means, portions being broken away and in section to facilitate the illustration;

Fig. 2 is a sectional elevational view thereof, taken through 2—2 of Fig. 1;

Fig. 3 is a sectional view in plan showing the relation of the rod and supporting clips with respect to the side and end walls of the box-like cornice; and,

Figs. 4 and 5 are, respectively, side and edge views of one of the curtain or drape rod supporting clips.

It is customary, in using Venetian blinds for windows, to suspend the Venetian

blinds, designated 1 in the drawing, from brackets 2 supported, either directly on the upper rail of a window casing or frame 3, or from a box-like cornice 4 secured to and built outwardly from the upper rail of the window frame, as shown in the drawing. It is also customary, when using curtains or drapes in connection with the Venetian blinds, to hang the curtains or drapes at the room side of the Venetian blinds from a suitable support above or in front of the Venetian blind, or from and within such cornice construction. My present invention, as illustrated in the drawings, shows the hanging of the curtains or drapes in such position from within the box-like cornice as now used.

My supporting means consists primarily of a plurality of thin resilient metal clips 11, each being made preferably of strips or bands of spring steel. One end of the clip has a securing portion $11^a$. From one end of the securing portion the clip is bent at an obtuse angle, as indicated by $11^b$. This angular portion is provided at the end, opposite the securing portion $11^a$, with a hook $11^c$. From the securing portion $11^a$ is struck a pair of prongs $11^d$, these prongs extending to the same side of the plane of the securing portion $11^a$ as the angular portion $11^b$.

In mounting the clips, or rod supporting brackets, the securing portion $11^a$ is fastened to the outer edge of the upper element or wall member $4^a$ of the box or cornice 4, while the latter is being constructed, with the prongs $11^d$ forced into such edge of this member $4^a$. The clip or bracket is securely held in position by the outer element or wall member $4^b$ of the box or cornice, as shown best in Fig. 2 of the drawing. It will be noted that when so secured, the hook $11^c$ is spaced inwardly from the inner side of the side element $4^b$ of the box or cornice, but it is positioned on the inner side of the angular portion or arm $11^b$, so that the hook is forced against the element or wall member $4^b$ if force is exerted on the drape, thereby closing the hook

and preventing the rod, held thereby, from leaving the hook.

The curtain or drape rod, shown and indicated 12 in the drawing, is U-shaped and is located within the box or cornice, with its legs $12^a$ adjacent the end elements or wall members $4^c$ of the box or cornice, and with the long connecting portion $12^b$ immediately inwardly from the front or long wall member $4^b$. The connecting portion $12^b$ of the curtain or drape rod is shown as supported by three clips while each leg $12^a$ is shown as supported by one clip. In supporting the drape rod on the brackets, the rod is placed within the box or cornice and merely snapped into the hooks $11^c$. It is, thus, resiliently held in position. The curtain or drape rod is resiliently held by the clips in such a manner that the ends of the legs $12^a$ are forced into engagement with the window frame 3 by the clips supporting the long or connecting portion $12^b$ of the rod, the dotted lines in Fig. 3 indicating the normal position of the rod if not limited by the window frame. Such engagement of the legs $12^a$ of the rod 12 tends to retain the curtain supporting hooks 21, near the ends of the legs $12^a$ thereon.

The usual manner of supporting drapes on rods is by pinning wire hooks to the hem portion at the top of the drape and hanging such hooks on the drape rod. The same method may be employed in this instance, and the hooks, designated 21, at the upper edge of the drapes 22 are hooked over the rod 12. The clips 11 provide suitable spacing and retention for such hooks over the rod so that the drapes are retained in the intended positions. The hook placed over the end portions of the drape rod will be prevented from passing beyond the ends of the rod by reason of the end portion of the latter being resiliently held against the window frame.

I wish it to be understood that I do not desire to be limited to the exact details of construction shown and described, for obvious modifications will occur to a person skilled in the art.