ARVIN INDUSTRIES, INC.,
Plaintiff-Appellee,

v.

BERNS AIR KING CORPORATION,
Defendant-Appellant.

No. 75–1881.

United States Court of Appeals,
Seventh Circuit.

Nov. 6, 1975.*

Norman Lettvin, Chicago, Ill., for defendant-appellant.

Jack W. Hanley, Jerry E. Hyland, Indianapolis, Ind., Clyde F. Willian, Chicago, Ill., for plaintiff-appellee.

Before FAIRCHILD, Chief Judge, TONE, Circuit Judge, and GRANT, Senior District Judge.**

* This case, originally before us as No. 74–1078, was orally argued October 2, 1974, and thereafter remanded for additional findings. *Arvin Industries, Inc. v. Berns Air King Corp.*, 510 F.2d 1070 (7th Cir. 1975). It has now returned to the same panel of this court for disposition on the merits without further oral argument or briefs.

** Senior District Judge Robert A. Grant of the Northern District of Indiana is sitting by designation.

TONE, Circuit Judge.

The issue in this action to recover royalties under a patent license is whether the patent covers the licensee's device. The District Court held that it does. We disagree.

Plaintiff and defendant are manufacturers of electric heaters. The patent in question, Patent No. 3,019,324, issued and assigned to plaintiff in 1962, covers the design and arrangement of the reflector and heating element portions of an electric heater. A prior infringement action between the same parties in 1968 ended with the entry of a consent decree, holding the patent valid and infringed, and the execution of a license agreement.

The defendant made only two semi-annual royalty payments under the agreement before modifying the reflector portion of its heaters, changing the model number designations, and ceasing to make further payments. Plaintiff then brought suit for infringement, while at the same time alleging the continued existence of the license agreement. We held in *Arvin Industries, Inc. v. Berns Air King Corp.*, 510 F.2d 1070 (7th Cir. 1975), that jurisdiction under the patent laws was lacking because the existence of the license precluded an action for infringement, and we remanded for a determination of whether diversity jurisdiction existed. The District Court determined upon remand that diversity of citizenship existed and that defendant had an obligation to pay royalties. The case is back before us for a review of the determination of liability.

Only Claim 9 of the patent is in issue. That claim describes a sheet metal heater reflector having a "generally planar reflective surface and a pair of flanges projecting forwardly therefrom along a pair of opposed edges of said surface," with at least one of the flanges "being bendable toward and away from" the other flange "along a fixed rectilinear bend line." Between the flanges is stretched a heating element, which is connected to the flanges by insulators mounted on the flanges. As the heating element heats or cools, and thus expands or contracts, the stressed flange or flanges hold it taut by bending away from each other.[1]

The patent calls for bending only along the "fixed rectilinear bend line." The central reflector is "generally planar" and does not bend. In the defendant's modified device, there is also bending along the bend line, but in addition the central part of the reflector, which is arcuate, bends to some degree.[2]

### The Prosecution History and the Prior Art

The initial application described and claimed essentially the same device now claimed in the patent, although the language used was less specific. The history of Claim 1 of the patent, which differs from Claim 9 only in requiring both flanges to bend instead of one, is instructive. Claim 1 of the application, the

---

1. Claim 9 provides in its entirety:
   "In an electric heater, a sheet-metal reflector mounted in a heater housing and directing heat outwardly therefrom, said reflector having a centrally disposed, generally planar reflective surface and a pair of flanges projecting forwardly therefrom along a pair of opposed edges of said surface, at least one of said pair of flanges being bendable toward and away from the other of said flanges along a fixed rectilinear bend line, a plurality of insulators mounted on said pair of flanges and projecting inwardly therefrom, and an elongated heating element mounted on said insulators forwardly on said centrally disposed reflective surface and disposed wholly within the extent of the reflector, said element retaining said one of flanges stressed toward said other flange when it is in its normal contracted state, whereby upon heating and cooling of said element with its resultant expansion and contraction said one flange will move from and toward said other flange about said bend line for retaining said element taut in both its expanded and contracted positions.".

2. The District Court found that "the central reflective surface moves backward slightly more than one-half the total deflection of the flange."

predecessor of Claim 1 of the patent, was rejected as being unpatentable over Madsen Patent 1,023,475, issued in 1912, for the reason, *inter alia*, that the "[r]esilient biasing members" of that patent,[3] which were made of insulating material and functioned as springs accommodating the expansion and contraction of the heating element, were equivalent to the flanges claimed in the application, and it was merely the exercise of mechanical skill to make the central reflector and flanges of integral construction and to place insulation between the metal flange and the heating element. In other words, using the spring principle to accommodate the expansion and contraction of the heating element was old in the art.

Nevertheless, after an amendment which appears to us not to have obviated that ground of rejection, the examiner apparently abandoned it and rejected amended Claim 1 on different grounds, principal among which was the French Berry patent, which showed a heater having a number of curved reflectors, each of which had "a central portion . . . and a pair of flanges . . . stressed toward each other," between which the heating element was stretched, with the flanges providing "means for automatically compensating for the expansion and contraction of the heating element . . . ." The applicant thereupon again amended Claim 1 to describe the central reflective surface as "generally planar," and to specify that the flange bent "about a rectilinear bend line." The remarks accompanying the amendment distinguish the amended claim over the Berry patent on the grounds, *inter alia*, of the generally planar central reflective surface of the application as compared with the curved surface of Berry's reflectors, and of the application's opposing flanges bendable only along rectilinear bend lines while "[t]he central reflective surface constantly remains in planar form," as compared with the bending of the entire surface of the Berry reflectors.[4] At the same time the applicant added the claim that became Claim 9 of the patent,[5] the claim before us, and stated that the added claim "is patentable over the art for the reasons previously set forth in connection with Claim 1." These reasons were presumably accepted by the examiner, and the patent issued with limitations in both Claims 1 and 9 calling for a "centrally-disposed, generally planar reflective surface" and "bending . . . along a fixed rectilinear bend line."

### The Exceptions in the Consent Decree and the License Agreement

Pertinent to the requirement of the patent that the reflector have a "generally planar" reflective surface are certain provisions of the consent decree and the license agreement. The consent decree provided as follows:

> "[A]ny heater constructed substantially the same as that disclosed and claimed in patent 3,019,324 except that the reflector is arcuate and bendable does not infringe said patent."

The license agreement contains the following similar provision:

> "It is understood that no royalties shall be payable on heaters employing

---

**3.** Which Madsen called "insulating tension member[s]" and were "mechanically fastened to a comparatively rigid base." The principle employed was similar to that in the patent at bar. "The stress of the tension member . . is so adjusted that it keeps the wires [the heating element] under stress when cold, and has sufficient moving power or resilience to take up the expansion of the resistance member [the heating element] as its temperature rises, and at the same time keep it taut and in its original plane." U.S. Pat. No. 1,023,475, p. 1, *ll.* 90–96.

**4.** The advantage claimed for this feature in the applicant's arguments was that "except for the limited degree of forwardly directed reflection effected by the flanges, the direction and focus of the forward reflection produced by applicant's reflector is fixed and constant," while in Berry's reflector the constantly changing focus of the reflector results in "a non-uniform heat distribution out of the heater."

**5.** This claim was originally Claim 10 of the second amended application.

an arcuate reflector in which the same is bendable and the insulators are mounted on portions of said reflector." [6]

Defendant relies heavily on these two provisions. Their language, however, if read literally, provides an exception from patent coverage only when the entire reflector is "arcuate." [7] Since only the central portion of the defendant's reflector is arcuate and the flanges are not, there is room for debate about whether that reflector may properly be described as an arcuate reflector. We need not resolve this question in order to decide the case.

### The "Generally Planar" Requirement

■ The radius of curvature of the central portion of defendant's reflector was, as the District Court noted, "variously claimed to be 14 and one-quarter inches and 21 inches." No finding was made as to the precise radius. The court held, and the plaintiff here contends, that when compared with the prior Berry reflectors, which had a radius of curvature of one and one-quarter inches, the curvature of the defendant's reflector is so slight that its shape may be considered "generally planar." We do not think the words "generally planar" extend that far. While it is true, as plaintiff points out, that "generally" and other similar words are sometimes construed liberally to avoid unduly restricting a patent claim, see, e. g., Kolene Corp. v. Motor City Metal Treating, Inc., 307 F.Supp. 1251 (E.D.Mich.1969), aff'd, 440 F.2d 77 (6th Cir. 1971), cert. denied, 404 U.S. 886, 92 S.Ct. 203, 30 L.Ed.2d 169 (1971), the imprecision of such a word

cannot be allowed to negate the meaning of the words it modifies. The use of the modifier "generally" in the context of Claim 9, we think, was intended to allow for irregular deviations from a perfectly flat surface and not to broaden the scope of "planar" to encompass surfaces which are distinctly arcuate by design. We conclude that the centrally-disposed portion of defendant's reflector was not generally planar.

### The Doctrine of Equivalents

The doctrine of equivalents does not help plaintiff. As we have seen, the use of the spring principle to accommodate the expansion and contraction of the heating element was old. Also old was deriving the spring effect from the resiliency of a curved reflector. What the patent in suit added was the very limited improvement of deriving the spring action solely from the bending of a flange along a rectilinear bend line while leaving the central portion of the heater fixed. Consequently, even apart from the file wrapper history, the patent owner would have been entitled to a very narrow range of equivalents for what was at best a minor improvement over the prior art. See Parmelee Pharmaceutical Co. v. Zink, 285 F.2d 465, 472 (8th Cir. 1961); Mason Corp. v. Halliburton, 118 F.2d 729, 731–732 (10th Cir. 1941).

The applicant's conduct of the prosecution, however, precludes any resort whatsoever to the doctrine of equivalents. He insisted in argument to the examiner that the central portion of the claimed reflector not only was "generally planar," while Berry's reflector was

---

6. There is no dispute that the flanges are part of the reflector and that the insulators are mounted on the reflector. There is no discussion in the briefs before us of the requirement of the license agreement exception that the insulators be "mounted on portions of said reflector." The insulators of the defendant's modified device appear to be snapped into holes in the flanges and further held in place by the tension of the heating element. They are substantially the same in appearance and manner of functioning as those shown on the

patent drawing, which are said to be "mounted," and those on the heater manufactured by plaintiff. Thus they too are "mounted."

7. The patent claim describes a "reflector having a centrally disposed, generally planar reflective surface and a pair of flanges projecting forwardly therefrom along a pair of edges of said surface." The consent decree and the license agreement, respectively, speak of a "reflector [which] is arcuate" and "an arcuate reflector."

curved, but also remained fixed as the heating element expanded and contracted, while Berry's bent. Thus the applicant disclaimed not only a reflector that was curved but one that bent over an area greater than a rectilinear bend line to accommodate expansion and contraction of the heating element.

Defendant's reflector did not bend solely at the fixed [8] rectilinear bend line; it bent in addition over the curved surface of the central portion, from the bend line to the place where the bending was interrupted by the brackets which fixed the reflector to the frame of the heater. This was substantially the same effect that occurred in Berry's reflector, and it was the effect disclaimed by the applicant in his argument to the examiner.

■■ Under these circumstances the patent owner is not entitled to the benefit of the doctrine of equivalents. *Schriber-Schroth Co. v. Cleveland Trust Co.*, 311 U.S. 211, 221, 61 S.Ct. 235, 85 L.Ed. 132 (1940); see also *Graham v. John Deere Co.*, 383 U.S. 1, 33, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). File wrapper estoppel precludes him from contending that what he gave up is equivalent to what he claimed. *Dixie Cup Co. v. Paper Container Mfg. Co.*, 169 F.2d 645, 648 (7th Cir. 1948).

The case is remanded to the District Court with directions to dismiss.

---

8. One of the issues tendered to us is whether the bend line of defendant's reflector is "fixed" in view of the fact that it moves in space by reason of the bending of the curved central portion of the reflector. The District Court held that it is, stating "[t]he intersection may move in space to compensate for heating element expansion and contraction and still be 'fixed,' but it may not move with regard to the flange and the central reflective surface." We assume for purposes of our decision that this holding is correct and that the bend line of defendant's reflector may properly be described as "fixed."