**CENTAUR CHEMICAL COMPANY, Plaintiff,**

v.

**ABBOTT LABORATORIES, Defendant.**

No. 78 C 0665.

United States District Court, N.D. Illinois, E.D.

Oct. 13, 1982.

Arthur O. Klein, Westport, Conn., Alfred W. Vibber, Pro Hac Vice, Klein & Vibber, New York City, Gerson E. Meyers, Marshall W. Sutker, Dressler, Goldsmith, Shore, Sutker & Milnamow, Ltd., David D. Kaufman, Chicago, Ill., for plaintiff.

James R. Hawkins II, Gary A. Macmillan, Cummings & Lockwood, Stamford, Conn., Ronald E. Larson, D. Dennis Allegretti, Pro Hac Vice, Allegretti, Newitt, Witcoff & McAndrews, Chicago, Ill., for defendant.

### MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

This matter is before the Court on the motion of counter-defendant, Centaur Chemical Company ("Centaur"), for summary judgment against counter-plaintiff, Abbott Laboratories ("Abbott"). Abbott filed an alternative supplemental counterclaim against Centaur for patent infringement in 1981, and Centaur seeks a decision by this Court that there is no genuine issue of material fact as to the facts upon which Abbott's counterclaim is based. For reasons set forth below, Centaur's motion for summary judgment is denied.

This matter involves a variety of business disputes between Abbott and Centaur. Ab-

bott sued Centaur in 1977 ("the 1977 case"), alleging violations of the Lanham Act, 15 U.S.C. § 1125(a), unfair competition and patent infringement. The patent count, Count III, was dismissed on grounds of improper venue under 28 U.S.C. § 1400(b), but Counts I and II remain in the case. A counterclaim by Centaur in the 1977 case alleged acts of unfair competition by Abbott under Ill.Rev.Stat., ch. 121½ § 312; this Court denied Abbott's motion for summary judgment as to that counterclaim. *Abbott Laboratories v. Centaur Chemical Co., Inc.,* No. 77 C 0602 (N.D.Ill. Aug. 25, 1981).

In a second action ("the 1978 case"), Centaur accused Abbott of unfair competition and sought a declaratory judgment as to the validity of the Abbott patent at issue in the 1977 case. The 1978 case was transferred to this Court from the District of Connecticut on February 10, 1978. On January 9, 1981, this Court granted leave to Abbott to file an alternative supplemental counterclaim for patent infringement in the 1978 case. We denied Centaur's motion to dismiss the supplemental counterclaim on August 25, 1981.[1] This opinion addresses Centaur's motion for summary judgment and dismissal of Abbott's supplemental counterclaim.[2]

Abbott's supplemental counterclaim alleges that Abbott is the assignee of United States Reissue Letters Patent No. 30,-391,[3] and that Abbott manufactures a cuvette[4] which embodies the invention described and covered by that patent. Abbott further alleges that Centaur's cuvettes infringe U.S. Reissue Letters Patent No. 30,-391. In support of its motion for summary judgment, Centaur argues that its cuvettes do not infringe U.S. Reissue Patent No. 30,391, alleging that Centaur's cuvettes have curved windows, and that the Reissue Patent only covers "planar windows."

In considering motions for summary judgment under Federal Rule of Civil Procedure 56, the Court must resolve all doubts as to the existence of material facts against the moving party, *Moutoux v. Gulling Auto Electric,* 295 F.2d 573, 576 (7th Cir.1961). A "party moving for summary judgment has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in his favor. *Cedillo v. International Association of Bridge & Structural Iron Workers, Local Union No. 1,* 603 F.2d 7, 10 (7th Cir.1979). Thus, in analyzing the various exhibits and affidavits submitted by the parties in this case, the Court must view any inferences from the facts contained in such materials in the light most favorable to Abbott, the non-movant. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

Moreover, while summary judgment has been granted in patent proceedings, *Medical Laboratory Automation, Inc. v. Labcon,* 670 F.2d 671 (7th Cir.1981); *Shemitz v. Deere & Co., Inc.,* 623 F.2d 1180 (7th Cir.1980), "the

1. Centaur was granted leave to voluntarily dismiss Counts I and II of the 1978 case. Thus, the sole remaining element in the 1978 case is Abbott's alternative supplemental counterclaim for patent infringement.

2. Jurisdiction over Abbott's supplemental counterclaim is asserted pursuant to 28 U.S.C. § 1338(a) and (b), and 28 U.S.C. §§ 1331 and 1332, and the amount in controversy is alleged to exceed the sum or value of $10,000, exclusive of interests and costs.

3. A party may obtain a reissue patent when a patent is deemed invalid or inoperative, due to a defective specification or drawing, or due to a patentee claiming more or less than he had a right to claim in the patent. 35 U.S.C. § 251. The patent in suit is based upon U.S. Patent No. 3,811,780. Abbott alleged that it applied

for reissue of patent No. 3,811,780, and disclaimed claims 1, 3, 4, 5, 9 and 10 of that patent. Abbott received the Reissue patent in exchange for the original patent on September 2, 1980.

4. Webster's Third New International Dictionary defines a cuvette as "a small often transparent vessel (as a tube or basin) that is used in scientific research." The cuvette allegedly covered by the patent in suit has thirty-two compartments and is made of an acrylic plastic. It is designed to fit into a machine known as a human blood analyzer. In the analyzer, a beam of light passes through blood specimens contained within each compartment of the cuvette, in an effort to measure the concentration of various substances in the blood.

courts should exercise great caution before granting such a motion in an infringement action." *Landau v. J.D. Barter Construction Inc.*, 657 F.2d 158, 161 (7th Cir.1981); *see also, Technitrol Inc. v. Control Data Corp.*, 550 F.2d 992 (4th Cir.1977), *cert. denied*, 434 U.S. 822, 98 S.Ct. 65, 54 L.Ed.2d 79 (1977) (summary judgment "is not ordinarily appropriate for the disposition of a patent case." *Id.* at 996). This is so because patent cases often raise complex issues requiring expert testimony for their resolution.

Before reaching the question of whether any material facts exist concerning Centaur's alleged infringement of Abbott's patent, it is necessary to examine the claims of that patent. In so doing, this Court will assume, without deciding, that the patent in suit, U.S. Reissue Patent No. 30,391, is valid.[5]

Centaur argues that the claims of U.S. Reissue Patent No. 30,391 cover cuvettes with "opposed planar window means." Abbott agrees that the claims of the patent in suit call for planar windows. Memorandum in Opposition to Centaur's Motion for Summary Judgment at 8–9, *Centaur Chemical Co. v. Abbott Laboratories*, No. 78 C 0665. An examination of the claims contained in the patent in suit reveals that planar windows are indeed required:

The following is claimed:

1. In a chemical analyzer, an improved cuvette comprising:

... window means *associated with each compartment comprising opposed planar members that are parallel to each other for transmitting radiant energy through*

at least some portions of the compartments, whereby the specimens may be analyzed;

\* \* \* \* \* \*

[4. A cuvette, as claimed in claim 1, wherein the window means associated with each compartment comprises opposed planar members that are parallel to each other.]

\* \* \* \* \* \*

14. An improved cuvette for use in a chemical analyzer comprising:

... *window means for transmitting radiant energy through at least some portions of each of the compartments comprising an opposed pair of planar members....*

\* \* \* \* \* \*

25. *A cuvette, as claimed in claim 14, wherein the predetermined distance between the planar members is one centimeter, and wherein the planar members in each pair are substantially parallel.* (Emphasis added).

While the claims of the patent clearly call for cuvettes with planar windows, Abbott and Centaur each offer different definitions of the word "planar." Centaur argues that "planar" means absolutely flat, and would have this Court rely upon a discussion of the term "generally planar" in *Arvin Industries v. Berns Air King Corp.*, 525 F.2d 182 (7th Cir.1975). While that court did not define the word "planar" in discussing the term "generally planar," it declared that:

[t]he use of the modifier "generally" in the context of Claim 9, we think, was intended to allow for irregular deviations

---

**5.** 35 U.S.C. § 282 establishes a statutory presumption of validity for patents, and requires one challenging a patent to show its invalidity with "clear and convincing evidence." *Medical Laboratory Automation, Inc. v. Labcon, Inc.*, 670 F.2d 671, 674 (7th Cir.1981). While Centaur denied that the patent in suit was duly and legally issued, Centaur's Reply to Abbott's Alternative Supplemental Counterclaim, *Centaur Chemical Co. v. Abbott Laboratories*, No. 78 C 0665, at 4, Centaur's motion for summary judgment did not address the validity of the patent in suit. By arguing that its cuvettes do not infringe the patent in suit, Centaur implicitly assumes that the patent in suit is valid.

The validity of a patent is a question of law which involves a number of factual issues, *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545 (1966); *LAM, Inc. v. Johns-Manville Corp.*, 668 F.2d 462 (10th Cir. 1982), *cert. denied*, —— U.S. ——, 102 S.Ct. 2298, 73 L.Ed.2d 1302 (1982). These issues include but are not limited to the scope and content of prior act, the level of skill in the pertinent act, and whether the patent is invalid for obviousness. Because much of this information is not presently before the Court, the validity of the patent in suit, should Centaur choose to litigate this point, is a matter best left for trial.

from a perfectly flat surface and not to broaden the scope of "planar" to encompass surfaces which are distinctly arcuate by design.

*Id.* at 185. Abbott maintains that the claims of the patent in suit do not employ the term "flat," and that "planar" means "relating to a plane" or "having a flat two-dimensional quality." Before addressing the issue of infringement, it is necessary to define the term "planar."

The construction of a patent is a matter of law. *Fred Whitaker Co. v. E.T. Barwick Industries, Inc.,* 551 F.2d 622, 629 (5th Cir.1977). Patents, furthermore, are defined by the scope of their claims. *Deere & Co. v. International Harvester Co.,* 658 F.2d 1137, 1141 (7th Cir.1981). It is important to emphasize that "[p]atent construction is not a matter of pure literalism and slavish adherence to the words used.... A patent is to be construed as a contract with the intent of the parties as the lodestar." *Weidman Metal Masters v. Glass Master Corp.,* 623 F.2d 1024 (5th Cir.1980), *cert. denied,* 450 U.S. 982, 101 S.Ct. 1519, 67 L.Ed.2d 817 (1981) (citations omitted). An analysis of the patent in suit reveals that the specifications of the patent describe the "preferred embodiment" as having "flat planar portions 98 and 100 that form a window section 38." U.S. Reissue Patent No. 30,391, col. 3, lines 14–15. However, the relevant claims of the patent in suit, which have been set forth at an earlier point in this discussion, do not employ the word "flat." Although courts may consider specifications and drawings when interpreting the claims of a patent, where the language of a claim is clear, it is controlling and may not be limited by specifications. *Maclaren v. B–I–W Group, Inc.,* 535 F.2d 1367, 1373 (2d Cir.1976), *cert. denied,* 429 U.S. 1001, 97 S.Ct. 531, 50 L.Ed.2d 612 (1976). The word "planar" is not an ambiguous term. We find that the omission of the word "flat" from the claims of the patent indicates that the term "planar" should be the focus of any inquiry concerning infringement of the patent in suit.

Webster's Third International Dictionary defines planar as "1: of or relating to a plane; lying on one plane. 2: having a flat two dimensional quality." Abbott offered this definition of planar, which Centaur accepted for purposes of this motion. Reply Brief in Support of the Motion for Summary Judgment at 4, *Centaur Chemical Co. v. Abbott Laboratories,* No. 78 C 0665. It is this definition that the Court shall apply in considering if there is no issue of material fact concerning whether Centaur has infringed the patent in suit.[6]

The patent laws define infringement as making, using or selling a patented invention without authority. 35 U.S.C. § 271. Infringement is generally a question of fact, *Hickory Springs Mfg. Co. v. Fredman Bros. Furniture Co.,* 509 F.2d 55, 58 (7th Cir.1975); *CS&M, Inc. v. Covington Bros. Technologies,* 678 F.2d 118 (9th Cir.1982). Courts must examine the words of a patent claim to decide whether an accused device infringes a patent. *Graver Tank & Mfg. Co. v. Linde Air Products Co.,* 339 U.S. 605, 607, 70 S.Ct. 854, 855, 94 L.Ed. 1097 (1950). In deciding whether Centaur's cuvettes infringe Abbott's patent, one important issue is whether Centaur's cuvettes have the planar windows called for by the patent in suit, or whether Centaur's cuvettes have curved windows. Centaur may be entitled to summary judgment at this point if there were no genuine issue of facts as to the shape of its cuvettes. But an analysis of the materials offered by both parties reveals that the shape of Centaur's cuvettes is a highly disputed fact. Centaur offers reports and an affidavit from a Dr. Stephen Duerr, to support its assertion that its cuvettes have curved windows. Abbott has presented patent applications and deposi-

---

**6.** In *Arvin Industries, Inc. v. Bern Air King Corp.,* 525 F.2d 182 (7th Cir.1975), the United States Court of Appeals for the Seventh Circuit emphasized that "generally planar" in a patent claim for a large sheet metal reflector in a space heater did not "encompass surfaces which are distinctly arcuate by design." *Id.* at 185. While that Court did not define "planar," the definition of "planar" employed by this Court in discussing the patent in suit, which the parties have accepted, is·in accord with the *Arvin* court's view of "generally planar."

tion testimony by Centaur's president and the maker of its cuvette molds, which declare that Centaur's cuvettes have planar windows. Abbott also cites a conclusion by Dr. Duerr that Centaur's cuvette windows are nominally flat in the vertical direction, and offers an affidavit from a mechanical engineer which declares that Centaur's cuvette windows deviate ± 0.00049 inches from a flat surface in the horizontal direction.

Therefore, at present this Court is not prepared to decide whether Centaur's cuvettes have planar windows; this matter is a disputed issue of material fact and can be resolved at trial or, by agreement of the parties, by a court-appointed expert. Centaur, for the purposes of this motion, has not clearly established the non-existence of a genuine issue of material fact, the window shape of its cuvettes. For the foregoing reasons, this Court cannot conclude that summary judgment is appropriate.

Accordingly, Centaur's motion for summary judgment is denied.[7] It is so ordered.[8]

---

7. The parties are to advise the Special Master as to whether they wish to have the binding determination of the shape of the Centaur cuvette's window submitted to an expert appointed by the Court and approved by the parties.

8. Now that this motion for summary judgment has been ruled upon by the Court, the parties are directed to meet with the Special Master to continue, if at all possible, their settlement dialogue.