Marie Zurbaran STRÁHLE

v.

**DILLARD'S DEPARTMENT STORES,**
Globe Shopping City, Solo Serve Company, Shopper's World, Joske's of Texas, and J. C. Penney Company.

Civ. A. No. SA–77–CA–302.

United States District Court,
W. D. Texas,
San Antonio Division.

Nov. 1, 1978.

John D. Wennermark, San Antonio, Tex., for plaintiff.

Ted D. Lee, Gunn & Lee, San Antonio, Tex., Dudley D. McCalla, Heath, Davis & McCalla, Austin, Tex., Donald R. Comuzzi, Cox, Smith, Smith, Hale & Guenther, Inc., San Antonio, Tex., Jed B. Maebius, Jr., Maebius & Duncan, Inc., Mitchell S. Rosenheim, Schenker, Rosenheim & Schenker, Charles Shaddox, Groce, Locke & Hebdon, San Antonio, Tex., for defendants.

## MEMORANDUM OPINION

JOHN H. WOOD, Jr., District Judge.

On October 6, 1977, Plaintiff (Marie Zurbaran Strahle) of San Antonio, Texas, filed suit charging the Defendants (Dillards Department Stores, Globe Shopping City, J.C. Penney Company, Joske's of Texas, Shopper's World, and Solo Serve Company) with infringement of her United States Letters Patent No. 3,023,419, entitled "Leotards and Costumes". In the complaint, the Plaintiff alleged that she was "the original inventor and designer" of a "device containing snaps, hooks or a zipper to easily open the crotch of a leotard, costume or body-suit" which allowed the wearer to change undergarments without completely disrobing.

According to the Plaintiff, all the Defendants infringed the patent "by making, displaying, advertising, selling, repairing and using snap devices on body-suits exactly like those specified in the plaintiff's patent" and "by making, displaying, advertising, selling, repairing and using articles of manufacture to which a colorable imitation of her patented design had been applied."

The patent application, which matured into the subject patent, was filed on November 12, 1959 and assigned Serial No. 852,385. The Letters Patent was finally issued on March 6, 1962, after successive limiting amendments were made during the prosecution of the patent application before the United States Patent and Trademark Office. The amendments, which comprise a portion of the history of the subject patent in the Patent Office, reveal that because of rejections by the Patent Office, the Plaintiff was required to amend her claim to include "two primary" and "two supplementary" fastening means for the crotch of a leotard dancing costume before her claim was allowed. (See Appendixes A and B.)

All Defendants answered and moved for summary judgment, Rule 56(b) and (c), Federal Rules of Civil Procedure, pleading that the litigation presented no substantial issue of fact and that pursuant to the undisputed facts the patent had not been infringed. Further, four of the Defendants alleged as additional grounds for summary judgment (1) invalidity of the subject patent, and (2) laches and estoppel.

Plaintiff in response to the motions for summary judgment did not claim that there was a literal infringement of her patent, but did assert that the "doctrine of equivalents" established a violation of her patent rights. Contending that a question of infringement is one of fact rather than a question of law, the Plaintiff argued that granting a summary judgment based on non-infringement would be improper.

## I.

## SUMMARY JUDGMENT

While the granting of summary judgment in patent cases is rare, it is fully appropriate in this case. As the Fifth Circuit stated in *Fraser v. City of San Antonio*, 430 F.2d 1218, 1220 (5th Cir. 1970), citing *Steigleder v. Eberhard Faber Pencil Company*, 176 F.2d 604 (1st Cir. 1949), *cert. denied*, 338 U.S. 893, 70 S.Ct. 244, 94 L.Ed. 548 (1949):

"Summary judgment under Rule 56(c), Federal Rules of Civil Procedure, 28 U.S. C.A., is sometimes appropriate in a patent case, at least on the issue of infringement. Where it is apparent that there is no genuine issue of fact bearing on infringement, and the structure and mode

of operation of the accused device such that they may be readily comprehended by the court, and compared with the invention described and claimed in the patent, without the need of technical explanation by the testimony of expert witnesses, then the court, if satisfied that there is no infringement, should give summary judgment for the defendant, instead of subjecting the parties to the expense of a trial."

In the instant case, the court was provided with the garments which the plaintiff alleged to infringe her patent claim. Because of the simplicity of the alleged invention, no expert witness testimony was required. There were no disputed facts in issue. Thus summary judgment is appropriate with the only question of law before the court being, "Do the alleged garments infringe the single claim of the patent?"

## II.

### INFRINGEMENT

Although the initial complaint alleged that Defendants' garments (including body suits) contained devices "exactly like those specified in plaintiff's patent" as well as "colorable imitations of her patented design", the Plaintiff conceded there was no literal infringement. Instead, the Plaintiff relies solely on the doctrine of equivalents to rebut Defendants' contention of non-infringement. The doctrine of equivalents allows a patentee to be protected in cases where an infringer has made only a slight modification in the infringing device, but the unauthorized device employs substantially the same means, to achieve substantially the same result, in substantially the same way as the claimed device. *Graver Tank Co. v. Linde Air Products Co.*, 339 U.S. 605, 608, 70 S.Ct. 854, 94 L.Ed. 1097 (1950). Under the doctrine of equivalents, the Plaintiff contends that the Defendants' body suits are merely slight modifications to her claimed device and thus infringe the single patent claim. If this were all that was required to support a claim of infringe-

ment, an enterprising inventor could obtain a patent with a very narrow claim from the United States Patent and Trademark Office, and subsequently sue anyone who manufactures a device of the same general type, yet be substantially different as to structural details. But this is not the case. Some limits have been placed on the doctrine of equivalents in order to protect against such a situation. Thus, the application of the doctrine of equivalents is superceded by the doctrine of file wrapper estoppel. *Lewis v. Avco Mfg. Corp.*, 228 F.2d 919 (7th Cir. 1956).

A necessary condition for the establishment of file wrapper estoppel is that the patentee must have narrowed his claims in response to an objection by the United States Patent and Trademark Office in order to obtain allowance of the claims contained in the issued patent. *Exhibit Supply Co. v. Ace Patents Corp.*, 315 U.S. 126, 62 S.Ct. 513, 86 L.Ed. 736 (1942); *I. T. S. Rubber Co. v. Essex Rubber Co.*, 272 U.S. 429, 47 S.Ct. 136, 71 L.Ed. 335 (1926). Therefore, a basic question which this court must determine is if the Plaintiff narrowed the single issued claim in response to objections by the Patent and Trademark Office. Since there was no disputed material facts, a review of the undisputed data contained in the deposition of the inventor and the file wrapper disclosed to the court that the Plaintiff amended her claim from broad language or construction claiming a "crotch opening being split and having inter-engaging means at opposite sides of said split . . . " (see Appendix C) to a very narrow claim limiting her patented device to "two primary complimentary fastening means" and "two supplementary complimentary fastening means", with the complimentary means being non-aligned with the supplementary means located on the same tab. The Plaintiff may not now reclaim through the doctrine of equivalents what was surrendered in response to the Examiner's rejections to obtain allowance of her single claim. *Ziegler v. Phillips Petroleum*

*Co.*, 483 F.2d 858 (5th Cir. 1973). The Plaintiff surrendered by amendment all rights to patent claims which could include any garment with a crotch opening having interengaging means on opposite sides of the split unless the garments specifically have non-aligned primary and supplementary fastening means. As the Plaintiff's own statement in her deposition indicated, when shown one of the allegedly infringing body suits, the garments did not have non-aligned fastening means. Therefore, as a matter of law, the Plaintiff is estopped from claiming a construction which would encompass a garment having only a single set of aligned fastening means located on each side of the opening. The garments apparently sold by all Defendants utilized only one such set of aligned fasteners; therefore, as a matter of law, there has been no infringement by the Defendants of such garments.

### III.

### INVALIDITY

Because there has been no infringement by the Defendants, I find it unnecessary to reach or decide the issues of invalidity or laches and estoppel.

### IV.

### DECISION AND ORDER

The court having considered the deposition, exhibits, affidavits, pleadings and briefs on file herein, and after hearing the argument of counsel, and the court finding no disputed issues of fact concerning alleged infringement, and it appearing after due deliberation that Defendants are entitled to summary judgment as a matter of law based upon non-infringement of the subject patent, it is hereby ordered that summary judgment in favor of all Defendants be and the same is hereby granted, and it is further ordered, adjudged, and decreed that Plaintiff take nothing by the complaint filed herein and the Defendants be awarded costs of court.

### APPENDIX A

The following is the only claim contained in United States Letters Patent No. 3,023,-419. The reference numerals and emphasis are this court's. Additionally, the claim can be more fully understood when read in connection with the drawing from Plaintiff's patent included as Appendix B.

*Claim*:

"A leotard dancing costume comprising a unitary body portion having a neck opening, arm openings and leg openings, said leg openings defining a relatively narrow crotch area [80] therebetween, said crotch area comprising a pair of mutually overlapping substantially straight-edged right angular cornered tabs [84, 94], two primary complementary releasable fastening means [86, 92], for said overlapping tabs, one [92] of said primary fastening means being located on the outer face of the underlying tab, the other [86] said primary complementary fastening means being located on the inner fact of the overlying tab, both said primary complementary fastening means being spaced from the straight edges of their respective tabs, and two supplementary complementary fastening means [88, 90] on said juxtaposed faces of said tabs at both corner ends of said overlying tab, *one [88] said supplementary fastening means being on said overlying tab and located closer to each straight edge corner than said primary fastening means thereon, said supplementary fastening means [90] on said underlying tab being located further from the straight edge of said underlying tab than said primary fastening means thereon,* whereby both said primary fastening means fasten said overlapping tabs firmly together and both said supplementary fastening means hold the overlying tab edges and overlying tab corners in close proximity to said underlying tab to thereby provide a substantially invisible crotch opening."

Appendix B to follow.

APPENDIX B

APPENDIX C

The following is claim 5 as contained in the application when filed, which application matured into the subject United States Letters Patent No. 3,023,419.

"5. A leotard comprising a body portion including a crotch, said crotch being split and having releasably interengaging means at opposite sides of said split, a flap connected to the front surface of said crotch on one side of said split, said flap being constructed and arranged to overlap said interengaging means when engaged, and releasable securing means on said flap, said releasable securing means being adapted to releasably retain said flap in overlapped position."