Randolph M. HOWES, Janice Kinchen
Howes and Arrow International, Inc.

v.

MEDICAL COMPONENTS, INC. and
American Hospital Supply Corp.

Civ.A. No. 84–4435.

United States District Court,
E.D. Pennsylvania.

July 22, 1985.

Thomas A. Masterson, Philadelphia, Pa., for plaintiff.

Wm. H. Eilberg, Philadelphia, Pa., for Components.

John W. Chestnut, Chicago, Ill., for American Hosp. Supply.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Plaintiffs Randolph M. Howes, Janice Kinchen Howes, and Arrow International, Inc. brought this action pursuant to 35 U.S.C. § 271(a) against defendants Medical Components, Inc. ("MedComp") and American Hospital Supply Corporation for infringement of Claim 7 of United States Patent No. 4,072,146 entitled "Venous Catheter Device", which was issued on February 7, 1978 to plaintiff Randolph M. Howes.

Presently pending before me is MedComp's motion for summary judgment and request for attorney's fees. MedComp contends that the patent in question is not infringed, that there are no material factual issues in dispute, and that the question of infringement is purely a matter of law. For the reasons stated below, MedComp's motion for summary judgment will be granted but its motion for fees will be denied.

*Background*

The Howes patent is for a triple lumen infusion catheter. A catheter is basically a tube which is inserted into the body for one or more purposes, such as draining fluids, injecting drugs or nutrients, or measuring blood pressure within veins or arteries. The tubes which carry these substances to or from the body are called "lumens". Dr. Howes' device is a multi-lumen catheter consisting of three tubes or channels, each of which is capable of carrying a different fluid, or performing a different diagnostic function simultaneously. Howes did not originate the multi-lumen catheter. In fact, Howes was compelled to amend his patent application to avoid infringing prior patents.

Howes first applied for the patent on September 8, 1976. The application described and illustrated a "venipuncture" device which included a hollow needle to insert a catheter into a vein, and a triple lumen venous catheter. This application contained ten claims defining the scope of the invention. The patent examiner denied the application and cited several prior patents that would be infringed by the Howes device. *Ballard* United States Patent 3,055,361 was cited against claims 1–4 and 9 which described the venipuncture device including the needle. The examiner also cited *Blake* United States Patent 3,995,623 and *Bielinski* United States Patent 3,437,-088 against claims 5–8 which describe the catheter itself. Each of these devices has protuberances along its distal end portion (the part of the tube that enters the body). In response to the examiner's citation of this prior art, plaintiff Randolph Howes dropped several claims and amended others to specify that the distal end portion of his catheter would have a "uniform outer diameter."

Plaintiff subsequently filed a reissue application. During the reissue proceeding, the patent examiner held all of the claims but Claim 7 to be unpatentable. Plaintiff then cancelled the remaining claims. There is only a slight difference between the patented Howes device and the prior art but, in this technical area, small yet significant differences are enough to prevent infringement. On February 7, 1978, plaintiff was issued a patent for the amend-

ed Claim 7 of his device. Claim 7, with its amended portions underlined, is as follows:

7. (Amended) A venous catheter device including an elongated, flexible catheter tube *provided with a distal end portion generally circular in cross-section and having a uniform outer diameter constructed for insertion into and capable of being fed longitudinally of a vein,* a plurality of independent lumens extending freely through said catheter tube, each of said lumens having a distal terminus adjacent the distal terminus of the catheter tube and spaced from each other, one of said lumens having its distal end substantially coextensive with the distal end of said tube, the other of said lumens exiting at lateral openings in said tube and being joined thereto, *at least one of said lumens providing means for infusing fluids into the blood stream,* the proximate ends of the lumens extending beyond the proximate end of said catheter tube and being fitted with a lumen adapter for connection to independent fluid devices.

*Discussion*

Summary judgment may only be granted when it has been established that there are no issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Small v. Seldows Stationary,* 617 F.2d 992 (3d Cir.1980). The court does not decide issues of fact, but merely determines if there is an issue of fact to be tried. *Ettinger v. Johnson,* 556 F.2d 692 (3d Cir.1977). The facts must be viewed in the light most favorable to the non-moving party and any reasonable doubt as to the existence of a genuine issue of fact is to be resolved against the moving parties. *Continental Insurance Co. v. Bodie,* 682 F.2d 436 (3d Cir.1982).

■ There is nothing inherent in patent actions which makes summary judgment inappropriate per se. Non-infringement as a matter of law may be decided upon a motion for summary judgment when it is possible to understand without extrinsic ex-

pert evidence the nature of the patented invention. The court must also be able to determine whether the alleged infringing device contains all the elements set forth in the patent claim, or the mechanical equivalents thereof. *Graphicana Corp. v. Baia Corp.,* 472 F.2d 1202 (6th Cir.1973); *Strahle v. Dillard's Department Stores,* 459 F.Supp. 396 (W.D.Tex.1978).

■ The most important issues in the present case involve the interpretation of certain words and phrases in the patent claim. Construction of a patent claim is a question of law, and if infringement depends upon proper construction of a claim, the court may decide the issue of infringement as one of law. *Ebeling v. Pak-Mor Manufacturing Co.,* 683 F.2d 909 (5th Cir. 1982).

The first area in dispute is plaintiffs use of the phrase "uniform outer diameter" in reference to the distal end portion of their venous catheter device. MedComp contends that because its catheter device has a tapered distal end it falls outside of plaintiff R. Howes' patent claim. It argues that plaintiffs are estopped from asserting that Claim 7 includes a catheter having a tapered tip because the "uniform outer diameter" language was inserted by amendment in response to the patent examiner's initial rejection of the Howes patent. In *Coleco Industries, Inc. v. United States International Trade Commission,* 573 F.2d 1247 (C.C.Pa.1978), the Court held that if a patentee argued a narrow claim construction before the United States Patent and Trademark Office ("PTO"), he is precluded from arguing a broader construction for the purposes of infringement. *See also Powell v. Kenner Products,* 213 U.S.P.Q. 1072 (M.D.Fla.1980). Because plaintiffs argued a narrow construction before the PTO, MedComp argues they are estopped from arguing a broader construction now.

■ Furthermore, MedComp argues that "file wrapper estoppel" precludes the application of the "doctrine of equivalents" to this case. Under the doctrine of equiva-

lents, two devices that do the same work in substantially the same way and accomplish substantially the same result are the same, even though they differ in name, form, or shape. *See Graver Tank and Manufacturing Co., Inc. v. Linde Air Products Co.,* 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1050); *Martin v. Barber,* 755 F.2d 1564 (Fed.Cir.1985). Defendant relies on *Builders Concrete Inc. v. Bremerton Concrete Products Co.,* 757 F.2d 255 (Fed.Cir. 1985) for the proposition that file wrapper estoppel precludes applying the doctrine of equivalents when the patentee has previously narrowed his claims in response to an objection by the PTO. The Court in *Builders Concrete* granted summary judgment for defendant, stating that file wrapper estoppel prevented plaintiff from broadening the scope of his claim. The distinguishing feature was inserted by amendment into Claim 1, but not into Claim 10. Although Claim 10 was not amended to recite the critical feature, the Court held that Claim 10 must be interpreted in view of the amendment to Claim 1. The present case presents an even stronger argument for the application of file wrapper estoppel because the "uniform outer diameter" language was added to every claim in the application. Therefore, defendant contends that the doctrine of equivalents does not apply to this case.

■ Plaintiffs, on the other hand, contend that the "uniform outer diameter" language does not prevent a catheter with a tapered tip from infringing the patent. Plaintiffs emphasize that patent construction is not a matter of pure literalism and slavish adherence to the words used. "A patent is to be construed as a contract with the intent of the parties as the lodestar." *Centaur Chemical Co. v. Abbott Laboratories,* 553 F.Supp. 62, 64 (N.D.Ill.1982). It appears that plaintiff R. Howes intended the "uniform outer diameter" phrase to distinguish the *Bielinski* catheter which had protuberances along its length. He argues that "uniform outer diameter" must be construed in light of its intent to distinguish the *Bielinski* patent. Plaintiffs contend that the amendment which distinguishes the present patent from *Bielinski* was intended to promote comfort and safety, which a catheter with a uniform outer diameter would provide. They further contend that a tapered distal end is within the scope of this amendment because it is consistent with their intentions.

Moreover, amendment of claims is a common practice in prosecution of patent applications. There is no reason for limiting application of the doctrine of equivalents to those comparatively few claims allowed exactly as originally filed. *Hughes Aircraft Co. v. United States,* 717 F.2d 1351 (Fed. Cir.1983). Therefore, considering plaintiff R. Howes' intentions and reasons for the amendment, it is reasonable to include tapered catheters within Claim 7 of the patent.

The next important dispute involves interpreting the words "joined" and "freely" as used in Claim 7. The word "joined", as defined in *Webster's Third New International Dictionary,* means: (1) "To put or bring together and fasten;" and (2) "To put or bring into close contact, association, or relationship." MedComp interprets "join" to mean fasten, as in the first definition. It supports this interpretation by referring to language appearing at the top of column four of the patent: "lumens 21, 23 preferably are *joined* to the tube 18 at openings 25, 27 using an adhesive, or by fusing." (emphasis added). The plain meaning of this statement is that the inner lumens are physically fastened to the outer tube at the specified openings. Interpreting this statement to mean that the lumens and tube would merely be in close contact is strained at best. Accepting MedComp's interpretation, Claim 7 can only be referring to figure 3 of the patent and not to figure 5. This latter figure resembles the MedComp catheter more closely than does figure 3.

In figure 3, the inner lumens are independent tubes and must be physically attached to the outer casing by an adhesive or by fusing. The lumens in figure 5, however, are not independent of the outer casing which, infact, forms their outer wall.

The lumens in figure 5 are, therefore, already attached to the outer wall of the catheter at openings 25 and 27.

Plaintiff argues that the proper interpretation of "joined" is "allowing the inner lumens to communicate or associate with the outside world." In support of this interpretation, plaintiffs refer to statements made by Randolph Howes at his deposition as well as the depositions of David Markel (MedComp's president) and Patrick Maloney (the designer of the MedComp catheter). The reliance of these depositions is, however, misplaced. The questions were much too narrow and misleading to provide much support for plaintiffs' interpretation. For example, although Mr. Maloney agreed that the hole in the accused catheter enables the lumen to communicate with the outside world, it does not mean that this is his interpretation of the word "joined" in the patent claim. Claims must be clearly supported in the description so that the meaning of the terms in the claims may be ascertainable by reference to the description. 37 C.F.R. § 1.75(d)(1). In light of the description, the more reasonable interpretation of "joined" appears to be the fastening required in figure 3 of the patent claim.

Plaintiff also argues that the doctrine of equivalents applies in case the Court finds literal infringement lacking. The doctrine of equivalents was designed to prevent an infringer from stealing the benefit of a patented invention by making unimportant and insubstantial changes. *Foster Wheeler Corp. v. Babcock and Wilcox Co.*, 512 F.Supp. 792 (S.D.N.Y.1981). Whether the patented and accused devices are equivalent is a question for the trier of fact. *Martin v. Barber*, 755 F.2d 1564. The changes made to the patented invention in the instant case are, however, neither unimportant nor insubstantial. The Howes patent differed only slightly from the prior art, yet the difference was considered substantial enough to prevent infringement. In the present case, MedComp's device differs from the Howes catheter in the overall design of its lumens. Although these changes may not be mas-sive, small changes have been enough to distinguish new catheters from prior art. MedComp's changes meet the test of being important and substantial. No material issues of fact could be reasonably in dispute as to prevent summary judgment from being granted.

The last interpretation dispute involves the word "freely" which the plaintiffs use to describe the inner lumens. Plaintiffs interpret this to mean that the lumens are unobstructed channels. MedComp, on the other hand, contends that this interpretation is flawed. A lumen by its definition is an unobstructed passage for fluid and following plaintiffs' definition would, therefore, be redundant. The more reasonable interpretation is that "freely" means the lumens are independent of each other as they extend down the catheter tube. In figure 5, the lumens are not independent of each other, but are part of the same piece of material. The lumens in this drawing are merely channels formed by partitioning the main catheter tube. Only in figure 3 do the lumens truly extend "freely" through the catheter tube. Because Claim 7 of the Howes patent refers to figure 3, but not figure 5, and only Claim 7 was actually accepted by the PTO, MedComp's device does not infringe the Howes patent on this point.

[7, 8] Even if only one of the two or three reasons for non-infringement is sustained, the conclusion of non-infringement remains intact. *American Hoist and Derrick Co. v. The Manitowoc Co., Inc.*, 603 F.2d 629 (7th Cir.1979). Every element of a claim alleged to be infringed must be found in the accused device and omission of any one element precludes infringement, even if the same results are achieved. *Sears, Roebuck & Co. v. Minnesota Mining and Manufacturing Co.*, 243 F.2d 136 (4th Cir.1957); *Graphicana Corp. v. Baia Corp.*, 472 F.2d 1202 (6th Cir.1973).

Plaintiffs' catheter and MedComp's catheter differ substantially in the construction of their inner lumens. The lumens in the plaintiffs' device are independent tubes that must be "joined" to the

outer casing. Also, the lumens in the Med-Comp catheter do not extend "freely" as do the lumens in the Howes catheter. Therefore, summary judgment must be granted in favor of MedComp.

 Finally, in exceptional patent infringement cases the court may award reasonable attorney fees to the prevailing party. 35 U.S.C. § 285. The purpose of this provision is to prevent gross injustice from unjustified litigation. The award of fees is remedial in nature, however, not penal, and should be invoked only when vexatious and unjustified litigation is clearly shown. *Phillips Petroleum Co. v. Esso Standard Oil Co.,* 91 F.Supp. 215 (D.C.Md. 1950). In the present case, the disputes in question were substantial enough to be considered justified. This case does not warrant awarding MedComp its attorney fees.

An appropriate order follows.